**Diana Christine DYKES, et al.,**
**Plaintiffs-Appellants,**

v.

**A.J. HOSEMANN, Jr., etc., Thomas A. Weinberg, etc., Roger Francis Dykes, Sr., etc., Roger Francis Dykes, Jr., etc. and Kenneth W. McIntosh, etc., Defendants-Appellees.**

**No. 83–3347.**

United States Court of Appeals,
Eleventh Circuit.

March 3, 1986.

J. Calvin Jenkins, Jr., William K. Meyer, Francis B. Burch, Baltimore, Md., for plaintiffs-appellants.

Douglas E. Whitney, Dist. Counsel, Dept. of H. & R. Serv., James A. Edwards, Orlando, Fla., Gerald B. Curington, Asst. Atty. Gen., Tallahassee, Fla., Brian R. Toung, Delia Doyle Rose, Daytona Beach, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

---

* Honorable Homer Thornberry, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by desig-

ON REMAND FROM EN BANC
COURT, 776 F.2d 942 (11/18/85)

ON PETITIONS FOR REHEARING

PER CURIAM:

The en banc court decided the judicial immunity issue, 776 F.2d 942, and remanded the case to this panel for such further consideration as the panel deems appropriate.

Pursuant to petitions for rehearing filed by defendants other than Judge Hosemann, the panel has reconsidered its decision.

The petition for rehearing of Kenneth W. McIntosh is GRANTED and with respect to him the judgment of the district court is AFFIRMED.

The petitions for rehearing of Roger Francis Dykes, Roger Francis Dykes, Jr., and Thomas A. Weinberg are DENIED.

The opinion of the panel, 743 F.2d 1488, is REINSTATED except to the extent that it decided the issue of Judge Hosemann's judicial immunity and decided the issue of McIntosh's appeal; and the dissent of Judge Hill is reinstated except to the extent that it concerns Judge Hosemann and Kenneth W. McIntosh.

HILL, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's order insofar as it affirms the decision of the district court with respect to appellants Hosemann and McIntosh. I dissent from the remainder of the order.

I recognize that my opinion dissenting from the panel opinion in this case has been reinstated, except to the extent that it addresses the appeals of Judge Hosemann and Kenneth W. McIntosh. I adhere to what I wrote then and offer the following additional comments.

The panel opinion, which has been reinstated insofar as it concerns the other appellants, discusses in only a cursory and conclusory fashion the voluminous deposi-

nation.

tion testimony and other materials on which the district judge relied when he found that there was no genuine conflict in the facts and granted summary judgment in favor of all of the defendants. The district court carefully reviewed somewhere in the neighborhood of 1,000 pages of deposition testimony and extensive affidavits and concluded that the undisputed facts did not support the plaintiffs' conclusory allegations of a conspiracy to violate their constitutional rights. My review of the record persuades me that the district judge was correct.

Regarding appellee Weinberg, the panel opinion finds him not to have addressed satisfactorily appellants' *contention* that Weinberg acted as part of the alleged conspiracy. The majority observes that he could be held liable on such a theory "if he reached an understanding with the other appellees to violate Diana's constitutional rights." *Dykes v. Hosemann*, 743 F.2d 1488, 1498 (1984). It is further observed that Weinberg, on his day off, conferred with Buzzy Dykes; that HRS official Kenneth Lofback (who worked under Weinberg) felt that it would not be proper for HRS to file a dependency petition under the circumstances of the case; that Weinberg was present before Judge Hosemann when Buzzy Dykes and Judge Dykes sought some relief from Diana's violation of the custody order and otherwise discussed the situation. The uncontroverted evidence shows that when Buzzy sought the aid of HRS in instituting a dependency proceeding, Lofback did indeed conclude that the department ought not proceed. He called on Weinberg, however, his superior, for a second opinion, and Weinberg came into Lofback's office. There, instead of formulating a conspiracy to use HRS to aid Buzzy, Weinberg agreed with Lofback that the circumstances did not justify intervention by the department. HRS does not presume to judge, however, whether an applicant is likely to succeed in a dependency petition. As is the duty of the department, Weinberg advised Buzzy that he might file a petition on his own and showed Buzzy how to complete a form petition.

Conspirators might have falsified the information on that petition. Weinberg did not do so. The information that had been given to the department, which Weinberg had deemed insufficient to justify action on his part, was faithfully and accurately transcribed onto the petition.

Later, when a custody order had been entered by Judge Hosemann vesting temporary custody in Buzzy, Diana spirited the child away to Maryland. The meeting that is said in the panel opinion to constitute evidence supporting appellants' allegations of a conspiracy was an application by Buzzy to the judge who had granted the temporary custody order for relief from its violation. Judge Hosemann sent for Weinberg, whose department, by statute, must consult with domestic relations judges in custody matters, to advise the judge whether Maryland had enacted a uniform child custody act. Weinberg did not know, but he undertook to find out and inform the judge of what he discovered. Judge Hosemann apparently wished to learn whether a custody order issued by a Florida court would be recognized in Maryland. As I read the panel opinion, we hold these undisputed facts to make out a case of conspiracy to deprive Diana of her constitutional rights sufficient to submit the case against Weinberg to the jury. I do not agree.

Regarding Judge Dykes, Buzzy's father, the panel observes that the judge did some legal research and made some notes on the law that might have been helpful to his son in petitioning for custody or some other relief. The panel opinion then states that "[t]hese notes, in addition to other testimonial and circumstantial evidence in the record convince us that triable fact issues exist as to Judge Dykes' participation in a conspiracy to deprive the appellants of their constitutional rights." 743 F.2d at 1498. The court thus states that if a father assists his son in seeking redress from the courts, that fact, in combination with something else as yet unstated, makes out a case of conspiracy on his part to deprive Diana's constitutional rights. I do not agree.

**1002**

Regarding Buzzy Dykes, the panel opinion observes that Buzzy went to Weinberg and provided him with the information upon which a dependency petition was sought; that he went to the judge who had granted him custody of his son when Diana spirited the child away; and that when Judge Hosemann issued an order that he hoped would be respected by the Maryland courts in this dispute, Buzzy took the order to Maryland and regained physical custody of the child. As I read the court's opinion, we hold that if a litigant takes these steps in furtherance of litigation he has commenced, a case is made out that is sufficient to allow a jury to find him a member of a conspiracy to deprive one of her civil rights. I do not agree.

In my view, the reinstated portions of the panel opinion fail to indicate with sufficient precision where the majority believes the district court erred in its sifting and analysis of the depositions and affidavits in the record. I fear that this is because the panel majority may have been moved more by the hyperbolic allegations of the plaintiffs' complaint (as opposed to the evidence in the record) than the opinion admits. The unfortunate result of our decision, as I apprehend it, is that if the evidence presented to the district judge and, on this appeal, to us is presented at trial, the district judge would be bound by the law of this case to submit that evidence to a jury. If that is to be the result of our decision, I believe we owe the parties and the district judge a better explanation than we have so far provided of what evidence we have discovered, overlooked by the district judge, that, in our judgment, creates a conflict which, if resolved in appellants' favor, would authorize a plaintiffs' verdict. I find none.

Criminal conspiracy has been said to be the "darling of the modern prosecutor's nursery." *Harrison v. United States,* 7 F.2d 259, 263 (2d Cir.1925) (L. Hand, J.). *See also Krulewitch v. United States,* 336 U.S. 440, 453–54, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring). We have now found counsel's sweeping assertions of dark conspiratorial conduct, supported by facts evidencing nothing more than the reasonable efforts of one litigant to prevail over his opponent and the proper discharge, by a public official, of the duties imposed upon him by law, sufficient to make out a claim for relief under section 1983. I fear that, as a result, the prosecutor's "darling" will become the civil litigator's "dearest."

I dissent.