Martha S. STRENGTH,
Plaintiff–Appellant,

v.

W.L. HUBERT, Charles Carroll, individually, et al., Defendants–Appellees.

William L. STRENGTH, Jr.,
Plaintiff–Appellant,

v.

W.L. HUBERT, Charles Carroll, individually, et al., Defendants–Appellees.

No. 87–7641.

United States Court of Appeals,
Eleventh Circuit.

Sept. 2, 1988.

Rehearing and Rehearing En Banc
Denied Oct. 6, 1988.

---

Griffin Sikes, Jr., Montgomery, Ala., for plaintiff-appellant.

David Christy, Asst. Atty. Gen., Ronald G. Davenport, Montgomery, Ala., for defendants-appellees.

Before JOHNSON, Circuit Judge, HENDERSON *, Senior Circuit Judge, and PITTMAN **, Senior District Judge.

PER CURIAM:

Martha and William Strength appeal from an order of the United States District Court for the Middle District of Alabama granting summary judgment in favor of the defendants, Charles Carroll and W.L. Hubert, in this action brought pursuant to the provisions of 42 U.S.C. § 1983. We affirm in part and reverse in part.

In July, 1981, William Strength and Hubert formed Autauga Transport, Inc. ("ATI"), a trucking business. Martha Strength, who was then married to William Strength, became the bookkeeper for ATI. The business dissolved in January, 1983 because of operating losses.

At the time relevant to this litigation, Carroll was an investigator for the Office of the Attorney General for the State of Alabama. In August, 1984, after receiving a telephone call from Hubert, Carroll met with Hubert and Samuel Moore, a former truck driver for ATI. During this meeting, Hubert showed Carroll cancelled checks drawn on ATI's account with the Bank of Prattville. These checks were payable to Moore and other ATI drivers. Each check bore both the payee's endorsement and the endorsement of William or Martha Strength. It is undisputed that on each check the payee's endorsement actually was made by either William or Martha Strength without the express permission of the payee. In addition, Hubert provided Carroll with ATI's corporate records which allegedly revealed discrepancies in the amounts of checks, the amounts of receipts and the dates of each.

After conferring with his supervisor, Corky Pugh, Carroll began an investigation of the alleged forgeries by the Strengths. In January, 1985, at the conclusion of his investigation, Carroll submitted his findings to the District Attorney of Autauga County, Alabama, Glen Curlee. Later that month, Carroll testified before the Autauga County Grand Jury concerning the activities of the Strengths. He was the sole witness before the grand jury, which eventually returned a multiple count forgery indictment against both of the Strengths.

In March, 1986, District Attorney Janice Williams, Curlee's successor, moved to dismiss the indictments. She explained her reasons for dismissal in a sworn affidavit that the Strengths attached to their response to the defendants' motions for summary judgment:

When I reviewed [ATI's business records] ... I was 'floored.' After reviewing these records it was apparent that the endorsements were not criminally made. To the extent that the records were produced, they completely exonerated the Strengths. None of the records

* *See* Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

produced indicated any criminal activity, but completely accounted for the money to which they related. I felt at the time and still feel that our office had been used and that we had been duped into indicting the Strengths.

The criminal charges against the Strengths subsequently were *nol prossed* on the motion of District Attorney Williams.

The Strengths then filed this complaint against Carroll and Hubert alleging that the defendants conspired, under color of state law, to cause their wrongful indictment and prosecution in deprivation of their rights under the fourth and fourteenth amendments.[1] The complaint also alleged pendent state causes of action. Both defendants moved for summary judgment. The district court granted the motions concluding that Carroll had absolute immunity for his testimony before the grand jury and, given that immunity, Hubert was not acting under color of state law. 660 F.Supp. 878 (M.D.Ala.1987). The plaintiffs filed a motion to reconsider. The district court then issued another memorandum opinion and order again granting the defendants' motions for summary judgment. In that memorandum opinion, however, the district court amended its prior ruling and held that Hubert was a state

actor. 670 F.Supp. 322, 329 (M.D.Ala. 1987). Nevertheless, the district court sustained its grant of summary judgment for Hubert on the ground that the alleged acts which preceded the grand jury testimony were not actionable under § 1983. *Id.* at 329. The Strengths appeal this order.

■ The first issue for resolution is whether Carroll is entitled to absolute immunity from civil liability based on his grand jury testimony. The district court determined that Carroll was absolutely immune under the rule of *Briscoe v. La Hue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). We agree with the district court's analysis.

In *Briscoe*, the Supreme Court held that a witness has absolute immunity from § 1983 liability based on the substance of his *trial* testimony. The Court, however, specifically declined to decide whether such absolute immunity extends to testimony in pretrial proceedings such as testimony before the grand jury. 460 U.S. at 328 n. 5, 103 S.Ct. at 1112 n. 5, 75 L.Ed.2d at 103 n. 5. The Strengths maintain that the district court's extension of *Briscoe* to grand jury testimony is unwarranted because grand jury testimony lacks the procedural safeguards against perjured testimony.[2] Al-

---

1. In furtherance of this conspiracy, the plaintiffs alleged that Carroll:

    (1) reviewed and selectively extracted documents from the books and records of ATI.
    (2) represented himself as a law enforcement officer of the Alabama Attorney General and, as such, caused various persons to submit to interviews and gained access to documents and information relevant to ATI's business.
    (3) met with and supplied false, misleading and incomplete information to the district attorney.
    (4) caused the district attorney to subpoena witnesses in furtherance of this wrongful prosecution.
    (5) withheld or destroyed exonerating evidence.
    (6) deliberately testified falsely and misleadingly before the grand jury.

    The complaint also claims that Hubert participated in the first, third and fifth activities listed above.

2. Three circuit courts have refused to apply *Briscoe* immunity to pretrial proceedings, citing the lack of procedural safeguards. *Anthony v. Baker*, 767 F.2d 657 (10th Cir.1985) (grand jury testimony); *Krohn v. United States*, 742 F.2d 24

(1st Cir.1984) (police officer swearing out a warrant affidavit); *Wheeler v. Cosden Oil and Chemical Co.*, 734 F.2d 254, *amended*, 744 F.2d 1134 (5th Cir.1984) (testimony at probable cause determination). Five other courts have extended *Briscoe* beyond the trial setting. *Williams v. Hepting*, 844 F.2d 138 (3d Cir.1988) (witnesses who testified at preliminary hearing absolutely immune in civil rights suit for damages alleging perjured testimony); *Holt v. Castaneda*, 832 F.2d 123 (9th Cir.1987) (police officer received absolute immunity for pretrial testimony in adversarial proceeding); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) (same policy concerns exist in grand jury setting); *Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983) (*Briscoe* applies to grand jury testimony); *Briggs v. Goodwin*, 712 F.2d 1444 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (*Briscoe* immunity applicable to grand jury testimony in *Bivens* action).

though the Strengths argue forcefully that extending *Briscoe* to grand jury testimony creates the danger of perjury going unpunished, their policy argument does not engage the principal theme of *Briscoe*—the protection of the *judicial proceeding*.

The foundation of *Briscoe* is part history and part policy. Initially, the Court observes that, historically, the "immunity of ... witnesses from subsequent damages liability for their testimony in *judicial proceedings* was well established in English common law." 460 U.S. at 330–31, 103 S.Ct. at 1113, 75 L.Ed.2d at 105 (emphasis added). The Court then delves into the policy that informs this common law rule of absolute immunity. The first policy consideration is the minimization of witness intimidation which might otherwise discourage witnesses from testifying. *Id.* at 333. Second, once witnesses do testify, the absolute immunity enhances reliability because those who testify will be less likely to distort their testimony in favor of a future plaintiff in a civil suit for damages. *Id.* The thread that unites the historical and policy foundations of *Briscoe* is the preservation of the judicial process. *Id.* at 334–35, 103 S.Ct. at 1115, 75 L.Ed.2d at 107 (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

At oral argument, the Strengths urged that the lack of procedural protections in the grand jury situation—cross-examination, rebuttal evidence, the presence and representation of counsel—somehow removes grand jury testimony from the realm of judicial proceedings. Moreover, the appellants contended that because the judge is not as closely involved with the grand jury as with a criminal trial, the grand jury is not a judicial proceeding as contemplated by *Briscoe*. This first argument is belied by the language of *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), cited by the Strengths for the proposition that absolute immunity should not extend to grand jury testimony.

In *Malley*, the Court held that a police officer who applies for a warrant by complaint and affidavit has only qualified immunity from civil liability under § 1983.

However, in so holding, the Court made a crucial distinction between functions that receive absolute immunity and those that receive only qualified immunity:

We have interpreted § 1983 to give absolute immunity to functions 'intimately associated with the *judicial* phase of the criminal process.' ... We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.... Thus we shield the prosecutor seeking an indictment [absolutely] because any lesser immunity could impair the performance of a central actor in the judicial process. 475 U.S. at 342–43, 106 S.Ct. at 1097, 89 L.Ed.2d at 279 (citations omitted) (emphasis original).

Although the Court addressed absolute immunity of a prosecutor in the quoted passage, the context of that immunity is vital to our inquiry. A prosecutor seeking an indictment is in the judicial phase of criminal proceedings. It follows, then, that the grand jury, which decides whether to indict, is part of the judicial phase. Therefore, grand jury testimony becomes a "judicial proceeding" under the functional analysis endorsed by *Briscoe*. 460 U.S. at 342, 103 S.Ct. at 1119, 75 L.Ed.2d at 112.

The Strengths' contention that the grand jury is not a "judicial proceeding" because the judge has a limited role not only runs afoul of the considerations previously discussed in *Malley* but also ignores the role of the judge in the grand jury process in Alabama. For example, the court both draws and summons grand jurors. Code of Ala. (1975), § 12–16–70. It is empowered to recall and reassemble the grand jury. *Id.*, § 12–16–190. The Court also can require a grand juror to disclose the testimony of any grand jury witness to determine whether perjury has been committed. *Id.*, § 12–16–201. This list does not exhaust the powers that the court may exercise over grand jury proceedings. Therefore, we reject the Strengths' suggestion that the more limited role of the judge somehow

divests the grand jury of its status as a "judicial proceeding."

The determination that Carroll has absolute immunity from civil liability based on his grand jury *testimony* does not end our investigation, however. The Strengths also base their § 1983 claim on an alleged conspiracy to cause their wrongful indictment and prosecution. In its memorandum opinion disposing of the Strengths' motion for reconsideration, the district court concluded that the pretestimonial acts in furtherance of this alleged conspiracy do not state a claim under § 1983 because they do not result in a constitutional deprivation. In our view, the district court erred in this conclusion.

■■■ The Supreme Court and this court's predecessor have recognized that a conspiracy to violate constitutional rights states a claim under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185, 190 (1980); *Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605–06, 26 L.Ed.2d 142, 150–51 (1970); *Crowe v. Lucas*, 595 F.2d 985, 990 (5th Cir.1979).[3] To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must demonstrate that the defendants " 'reached an understanding' to violate [his] rights." *Dykes v. Hosemann*, 743 F.2d 1488, 1498 (11th Cir. 1984), *vacated*, 776 F.2d 942 (11th Cir. 1985), *reinstated*, 783 F.2d 1000 (11th Cir.), *cert. denied*, 479 U.S. 983, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986). Therefore, if the alleged conspiratorial, pretestimonial acts of Carroll and Hubert impinge upon rights protected by § 1983, then the district court's conclusion with respect to the conspiracy claim must be reversed.

■■■ In *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir.), *cert. denied*, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972), our predecessor court determined that "there is a federal right to be free from bad faith

prosecutions." The district court, however, declined to follow *Shaw* because the new Fifth Circuit, in *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254 (5th Cir.), *amended*, 744 F.2d 1134 (5th Cir.1984), had questioned its continued validity in light of the intervening decision of the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein*, the Court held that the fourth amendment requires a state to provide a judicial or neutral determination of probable cause for a person detained after arrest.[4] This determination, however, does not, under the Constitution, necessitate an adversarial determination, with its full panoply of procedural safeguards. *Id.* at 123, 95 S.Ct. at 867–68, 43 L.Ed.2d at 71.

The *Wheeler* court's misgivings about *Shaw* focused on a footnote in *Gerstein:* "Because the probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial." 420 U.S. at 125 n. 25, 95 S.Ct. at 869 n. 26, 43 L.Ed.2d at 72 n. 26. This passage prompted the *Wheeler* court to consider whether *Gerstein* gave a prosecutor absolute discretion "to charge one he has no reason to suspect" as long as there is no detention. 734 F.2d at 259. The court in *Wheeler* determined, however, that the language of *Gerstein* assumes a duty by the prosecutor to determine probable cause before making a charge. *Id.* at 259–60 (citing *Gerstein*, 420 U.S. at 113–14, 95 S.Ct. 862–63, 43 L.Ed.2d at 64). Given this duty, *Wheeler* concluded that a right against "capricious prosecutions," i.e. those prosecutions procured by false and misleading information that would cause a prosecutor to believe probable cause existed when it in fact did not, was incorporated by the fourteenth amendment. 734 F.2d at

---

3. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to October 1, 1981.

4. The fourth amendment requirement of probable cause has been incorporated in the due process clause of the fourteenth amendment and is therefore applicable to the states. *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed.2d 1782 (1949).

260. Thus, the rule in *Shaw* survived *Gerstein*.

We agree with the new Fifth Circuit Court of Appeals that "a safeguard so fundamental to criminal due process—one against capricious prosecutions—is ... incorporated by the fourteenth amendment." 734 F.2d at 260.[5] Thus, any of the pretestimonial acts that might have undermined the federally guaranteed right to be free of malicious prosecution can form the basis of a § 1983 action.

Finally, we note that Carroll, in his motion for summary judgment, raised the issue of qualified immunity from civil liability for his acts prior to the grand jury testimony. Acts in furtherance of an official investigation may be cloaked in qualified immunity. *See Rich v. Dollar*, 841 F.2d 1558 (11th Cir.1988). The district court, however, did not address this issue when considering the motions for summary judgment. Therefore, we decline to reach the question of Carroll's qualified immunity for his pre-testimonial acts and leave that issue for the district court to consider on remand.

Accordingly, the judgment of the district court granting Carroll absolute immunity from civil liability based on his grand jury testimony is AFFIRMED. The district court's grant of summary judgment for Hubert and Carroll on the conspiracy claim for pretestimonial acts is REVERSED and REMANDED for proceedings not inconsistent with this opinion.

---

**5.** We note that while we are persuaded by *Wheeler*'s disposition that freedom from malicious prosecution is a federal right protected by § 1983, we do not endorse its analysis of the *Briscoe* immunity issue.