**John J. FLOOD, Patricia Mary Flood and Mary Josephine Flood, Plaintiffs,**

v.

**James O'GRADY, James Dvorak, Earl Johnson, Roy Peters and Richard Simon, Defendants.**

No. 89 C 09043.

United States District Court, N.D. Illinois, E.D.

Sept. 17, 1990.

**596**

James A. Geocaris, William Taylor II, Jim Azim, Siemon Larsen & Purdy, Chicago, Ill., for plaintiffs.

Madeleine S. Murphy and Harold E. McKee III, Asst. State's Attys., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs have sued the defendants, the Sheriff of Cook County and other high-ranking officials in his administration[1] for damages and injunctive relief under 42 U.S.C. § 1983 (1982). Specifically, plaintiffs charge violation of free speech and other infringements arising out of alleged incidents of intimidation and harassment. The defendants move for summary judgment, which, for the reasons set forth below, we deny in part and grant in part.

### Factual Background

John Flood is President of the Combined Counties Police Association (CCPA), a union representing police officers in Cook County and various northern Illinois municipalities. In that capacity, Flood occasionally writes for the union's magazine, and is sometimes interviewed by the mainstream press. He remains on leave of absence from the Cook County Sheriff's office, as he has since the early 1970s.

His wife, Patricia Flood, works as an administrator in the union office. His daughter, Mary Flood, an 18-year-old college student, resides with her parents in Northbrook, Illinois, and has done clerical work for the union on a part-time basis.

Flood is a frequent and vocal critic of Sheriff O'Grady and his administration. Articles written or published by Flood in the union magazine between October 1 and December 1, 1989, took O'Grady to task

1. A brief description of the defendants will be helpful. Sheriff O'Grady was elected to office as the Republican candidate in November 1986. As sheriff, he generally directs and supervises the activities of all the employees in his office. James Dvorak is Undersheriff of Cook County, a position he assumed following appointment by O'Grady in 1986. Earl Johnson is Chief of Police of the Sheriff of Cook County; he supervises employees assigned to the sheriff's police department. Roy Peters is a lieutenant with the Cook County Sheriff's Police. Richard Simon was at all times relevant to this litigation a chief inspector with the Cook County Sheriff's office. As the only defendant not currently employed by Cook County, he is sued here only as an individual. The other defendants are all sued individually and in their official capacities.

for, among other things, poor security at the Cook County Jail, the politicization of the sheriff's office, and the hiring of defendant Simon as Chief Inspector. On October 18, 1989, the *Chicago Tribune* quoted Flood as saying that "[t]he reputation of the sheriff's office is probably at its lowest level since I've been a police officer."

The plaintiffs' complaint details four incidents of alleged intimidation and harassment either carried out or ordered by the defendants. These incidents, they maintain, came in response to Flood's open and public criticism of the sheriff's office, and Sheriff O'Grady in particular.

The first incident took place on October 18, 1989, the same day that Flood was quoted in the *Chicago Tribune* story. Three men arrived unannounced at the Flood home in Northbrook at about 7:40 p.m. Flood asked them what they wanted. The men showed him Cook County Sheriff's office badges, and told Flood that Simon had sent them to pick up Flood's deputy sheriff's credentials.[2] Flood informed them that he had returned those credentials to O'Grady personally, and asked them to leave. Both Patricia and Mary Flood either saw or overheard Flood's exchange with the three men.

The second incident occurred the following day, October 19, 1989. Flood received a letter at home from James Hogan, personnel director for the Cook County Sheriff's office. Hogan requested the return of Flood's deputy sheriff's credentials, and threatened arrest and prosecution if Flood did not comply. Flood promptly informed Hogan, as he had informed the men who came to his house the previous evening, that he had already returned the badge.

The third incident took place on October 27, 1989 at a luncheon attended by law enforcement professionals. O'Grady swore at Flood and told him to turn his credentials in or he would be arrested.

The fourth and final incident transpired during a raid on the New Junction Lounge, a restaurant and bar in Dixmoor, Illinois.

While conducting the raid, led by defendant Peters, Cook County Sheriff's deputies found several completed petitions supporting Flood's nomination as the Democratic candidate for sheriff. Defendant Johnson, contacted by phone from the Lounge, instructed the deputies to remove the petitions and take them to a nearby sheriff's office.

### Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). All inferences that can be drawn from the evidence presented are drawn in favor of the non-moving party—in this instance, the plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 460 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

Defendants address five major issues in their motion for summary judgment: 1) the plaintiffs' right to an injunction; 2) the conspiracy claims; 3) Mary and Patricia Flood's right to damages stemming from the first incident at their home; 4) a qualified immunity defense; and 5) the equal protection claims. We examine each of those issues in turn.

---

**2.** Flood received the credentials in 1981 following a meeting with, among others, defendant O'Grady, then Undersheriff of Cook County.

Police officers on leave of absence apparently do not retain their badges.

## I. Injunctive Relief

■ Defendants initially argue that plaintiffs fail to present an Article III "case or controversy" with respect to the requested injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983). That is, they maintain that even in a free speech context " 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse affects.' " *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974)).

The *Lyons* decision establishes a two-part test for determining when a request for injunctive relief states a case or controversy. *Id.* 461 U.S. at 105–06, 103 S.Ct. at 1667. First, the plaintiff must show that he is likely to have another encounter with the defendant. *Id.* at 106, 103 S.Ct. at 1667. Second, he must demonstrate that he will again be subjected to the complained of practice. *Id.*

In *Lyons*, the plaintiff sought an injunction prohibiting the use by police officers of "chokehold" restraints except in certain "deadly force" situations. *Id.* at 98, 103 S.Ct. at 1663. The Supreme Court ruled that the plaintiff had no standing to seek the injunction because of "the speculative nature of his claim that he will again experience injury as the result of that practice even if continued." *Id.* at 109, 103 S.Ct. at 1669.

Here, it is virtually certain that Flood will have future encounters with the defendants. As president of the police union, Flood is in contact with various members of the Cook County Sheriff's office nearly every day. As an outspoken observer, he is likely to continue to comment on the policies and practices of the O'Grady administration. The first prong of the *Lyons* test is easily satisfied; clearly, Flood's continued interaction with the defendants is quite predictable.

As to the second part of the test, the required certainty of injury need not be as absolute in a First Amendment setting as

that set forth in *Lyons* in an "excessive force" circumstance. *See generally* Fisher, *Caging Lyons: The Availability of Injunctive Relief in Section 1983 Actions*, 18 Loy.U.Chi.L.J. 1085 (1987). Indeed, "[w]ithin the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing." *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984). Moreover, that no further incidents have occurred since the filing of this suit does not suggest that no further incidents will ever occur; "protestations or repentance and reform timed to anticipate or blunt the force of a lawsuit offer insufficient assurance that the practice sought to be enjoined will not be repeated." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354–55 (5th Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978).

■ Defendants' related argument that no injunction is necessary because Flood has continued to carry on with his campaign of criticism and dissent is without merit. To argue that the plaintiffs' persistence in exercising their constitutional rights voids any claim they might make for a protective injunction is illogical. *Trotman v. Board of Trustees*, 635 F.2d 216, 227 (3d Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981). The protections of the First Amendment are as equally applicable to the brave, those "who overcome their inhibitions and fears to proceed on a course they believe constitutionally protected," as to the timid. *Id.*

That being said, we take judicial notice that the next election for Cook County Sheriff will be held November 6, 1990. The plaintiffs' complaints are clearly against the alleged political agenda of the incumbent sheriff and several of his key aides and not addressed to any general policy of the office of sheriff. Should Sheriff O'Grady not be re-elected in the upcoming election, plaintiffs' claim for injunctive relief will be moot and dismissed at such time. *Cf. Martinez v. Winner*, 771

F.2d 424, 436 (defendant federal district judge resigned from office, rendering injunctive relief claim against him moot), *modified in part, and reh'g denied in part,* 778 F.2d 553 (10th Cir.1985), *vacated on other grounds sub nom. Tyus v. Martinez,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986).

The defendants' motion for summary judgment is denied as to the injunctive relief issue.

## II. Conspiracy

■ Without citation of authority, defendants argue that "conspiracies to deprive individuals of their constitutional rights are more properly brought pursuant to 42 U.S.C. § 1985(3)," and thus ignore the fact that conspiracy claims may be brought under 42 U.S.C. § 1983, as plaintiffs do here. *See, e.g., O'Donnell v. Village of Downers Grove,* 656 F.Supp. 562, 568 (N.D.Ill.1987) ("An action for conspiracy may be maintained under 42 U.S.C. § 1983."); *see also Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988). Thus, the authority defendants do cite relative to the intricacies of § 1985(3) conspiracy claims is irrelevant, since plaintiffs do not allege a conspiracy under that section of the law.

■ The elements of a § 1983 conspiracy are well-settled in the Seventh Circuit. *Pontarelli Limousine, Inc. v. City of Chicago,* 704 F.Supp. 1503, 1509 (N.D.Ill.1989). There are two requirements. First, it must be shown that there existed "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights"; and, second, that such agreement resulted in "actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Id.* (citing *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988)).

After examining the complaint, affidavits, depositions and briefs in this case, and

after drawing all inferences in favor of the plaintiffs, as is appropriate in adjudicating defendants' summary judgment motion, we think a finding for the defendants at this stage of the litigation is inappropriate.[3] A reasonable factfinder could find that defendants agreed or had an understanding to deprive the plaintiffs of their constitutional rights. Therefore, we deny their summary judgment motion as to the conspiracy allegations.

## III. Patricia and Mary Flood's "First Incident" Claims

■ Mere physical proximity to an altercation or confrontation taking place even in one's own home does not abridge one's legitimate liberty interests in personal security. *Plambeck v. Stone,* 662 F.Supp. 298, 301 (N.D.Ill.1986). Plaintiffs' attempted distinctions between "First Amendment retaliation" and abridgement of "due process liberty interests" are immaterial in this context, particularly since what they allege in their complaint is grounded in the latter. First Amended Complaint ¶¶ 18–19 ("physical danger"; "physical safety").

*Plambeck,* therefore, is essentially indistinguishable from the facts alleged in this case. Indeed, this is, if anything, a less troubling factual scenario than that in the previous case. In *Plambeck,* two plainclothes policemen went to the plaintiffs' home to arrest one of the plaintiffs. *Plambeck,* 662 F.Supp. at 299. A fight broke out between the officers and the intended arrestee when the officers, who had arrived at the plaintiffs' home in an unmarked police vehicle, declined to produce an arrest warrant. *Id.* At some point, various members of the Plambeck family, including at least two minor children, became embroiled in the melee. *Id.* at 299–300. Eventually, another police officer arrived and helped restore order; three members of the family were arrested and charged with various forms of battery. *Id.* at 300.

---

**3.** We note that a § 1983 conspiracy allegation, if proved, may ensnare any or all of the named defendants without regard to which defendant actually performed the particular alleged act. *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963), *cert. denied,* 375 U.S. 975, 84 S.Ct. 489, 11

L.Ed.2d 420 (1964). Summary judgment is thus inappropriate with respect to any of the defendants, regardless of their apparent distance from any of the specific incidents alleged in the complaint.

Two members of the family sued under § 1983, alleging that the incidents at their home caused them emotional and psychological stress. *Id.* The court dismissed the claim, ruling that their "legitimate liberty interests were not abridged by their proximity to the altercation...." *Id.* at 301. Patricia and Mary Flood's claim regarding the first incident cannot be meaningfully distinguished from the claim dismissed in *Plambeck;* defendants' summary judgment motion as to that issue is granted.

### IV. Qualified Immunity

■ Defendants are shielded from individual liability only if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *accord Williams v. Lane,* 851 F.2d 867, 882 (7th Cir.1988), *cert. denied,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). Generally speaking, the doctrine of qualified immunity is designed "to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton,* 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987) (quoting *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)).

Qualified immunity is an affirmative defense, and the defendants have the burden of proof. *Williams,* 851 F.2d at 882; *see also Klein v. Ryan,* 847 F.2d 368, 369 (7th Cir.1988). Reasonably competent police officials know that they may not engage in the kinds of acts plaintiffs allege "in retaliation for the exercise of their first amendment rights...." *Abel v. Miller,* 824 F.2d 1522, 1535 (7th Cir.1987). Defendants' motion for summary judgment on this issue is denied.

### V. Equal Protection

■ Defendants fail to address the precise nature of plaintiffs' equal protection claims. They maintain that those claims should fall because "[n]o allegations of discrimination based on membership in a particular class has been alleged by the plaintiffs." Reply Brief at 9. The Supreme Court, however, has long held that governmental action may violate equal protection rights in two ways—when that action "impermissibly interferes with the exercise of a fundamental right *or* operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (emphasis added; footnotes omitted). Plaintiffs here allege an impermissible interference with the exercise of their rights of free expression. Defendants do not offer any basis for granting their motion for summary judgment as to this issue. Accordingly, it is denied.

### Conclusion

For the foregoing reasons, we deny defendants' summary judgment motion as to the injunctive relief, conspiracy, qualified immunity, and equal protection issues. We grant summary judgment with respect to Patricia and Mary Flood's "first incident" claims. It is so ordered.