[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-2290

_____

D. C. Docket No. 95-30380/LAC

GJR INVESTMENTS, INC.,

Plaintiff-Appellee,

versus

COUNTY OF ESCAMBIA, FLORIDA, a political subdivision
of the State of Florida, LISA MINSHEW,

Defendants,

W. A. LEE, a.k.a. BUCK LEE, WILEY C. PAGE,
 BENNIE KENNEY,

Defendants-Appellants.

_____

No. 96-2321
_____

D. C. Docket No. 95-30380-CIV-LAC

GJR INVESTMENTS, INC.

Plaintiff-Appellee,

versus

COUNTY OF ESCAMBIA, FLORIDA, a political subdivision
of the State of Florida

Defendant,

LISA MINSHEW,

Defendant-Appellant,

W. A. LEE, a.k.a BUCK LEE, WILEY C. PAGE,
BENNIE KENNEY,

Defendants.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

**(January 5, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

COX, Circuit Judge:

This case concerns a highly politicized dispute over plaintiff-appellee GJR Investments, Inc.'s desire to construct an RV campground on its property on Perdido Key in Escambia County, Florida. Escambia County eventually granted GJR a permit to build the campground, although GJR had to submit four separate applications, and filed two state court lawsuits in the process. GJR then sued the county and several county officials and employees under 42 U.S.C. § 1983 for damages caused by the delay in approving the permit, alleging that the county and the named defendants had violated GJR's constitutional rights by delaying the permit approval process.

GJR contends that the individual defendants-appellants[1] intentionally threw up procedural roadblocks during the permit approval process in an attempt to delay or deter its construction of an RV park on Perdido Key. GJR argues that these actions violated its rights both to due process and to equal protection under the Fourteenth Amendment, and further that the delay in effect accomplished a taking of its property without just compensation for purposes of the Fifth Amendment.[2] In the district court the defendants moved to dismiss GJR's claims under Fed. R. Civ. P. 12(b)(6) on the

---

[1]Although Escambia County is also a defendant to the suit, it is not a party to this appeal. We will refer to the four individual defendants-appellants (Minshew, Lee, Page and Kenney) collectively as "defendants" for purposes of this opinion, naming Escambia County separately when necessary.

[2]While GJR makes these constitutional arguments in its brief, this appeal comes to us in the context of a motion to dismiss. Therefore, the proper inquiry, *see* Part V.B.2., *infra*, is whether GJR sufficiently alleged a constitutional violation in its *complaint*.

1

ground of qualified immunity. The court denied the motions, and defendants appealed. For the reasons stated below, we reverse the district court's ruling.

## I. ALLEGATIONS OF THE COMPLAINT

A complete copy of the complaint is made an appendix to this opinion. Accepting all allegations in the complaint as true, and construing facts in a light most favorable to the plaintiff, *see Harper v. Thomas*, 988 F.2d 101, 103 (11th Cir. 1993), we summarize the allegations as follows.

Appellee GJR Investments, Inc. is a Texas corporation that is the "beneficial owner,"[3] (R.1-1 at 3), of certain real property on Perdido Key in Escambia County, Florida. The property is located in an area designated by Escambia County Ordinance Code (the "Code") 89-6 as a commercial "C-1" zoning district. GJR sought to develop the property as an RV campground despite strident opposition from the residents of Perdido Key.

In October 1992 GJR filed its first application to develop the property as a campground. On the advice of the staff of the Escambia County Department of Growth Management Services that the proposed campground was not a "permitted use" in a C-1 district, GJR applied to develop the property as a special exception and

---

[3]This is the term that GJR uses in its complaint to describe its interest in the property at issue. However, the complaint fails to explain further the nature of this "beneficial" ownership, stating only that Perdido Beach Limited, a Louisiana limited partnership, and Yenavlum, Inc., a Texas corporation, "[hold] legal title to the Property as [GJR's] agents and nominees." (R.1-1 at 4.)

planned use development ("PUD"). GJR withdrew its application in December of 1992, upon further advice from the Growth Management Services staff that the application still did not comply with the Code.

In May 1993 GJR submitted a second application, this time to develop the campground as an amusement/recreational facility and a PUD. The Escambia County Zoning Board of Adjustment denied this application, and GJR appealed to the Escambia County Board of County Commissioners, which affirmed the decision. GJR subsequently appealed the the county commissioners' decision to the Florida state courts.

While its appeal was pending, GJR filed a third application, this time for permission to develop the campground as a permitted use under the Code. This application also was denied. Subsequently, GJR filed a suit for declaratory judgment, asking the Florida courts to declare that development of the property as a campground is a permitted use under the Code. In March 1994, the parties settled the dispute regarding the permit: The county agreed to approve a fourth application from GJR to develop the property as a campground as a permitted use, and in return GJR dismissed both of its pending state lawsuits.

In its complaint, GJR calls attention to various actions on the part of the individual defendants that GJR alleges violated its constitutional rights:

3

A.   BENNIE KENNEY

Kenney is an assistant to W.A. "Buck" Lee, an Escambia County Commissioner. Kenney is a resident of Perdido Key who opposed the construction of the campground and was involved in a citizens' group that organized to oppose the project. GJR alleges that at defendant Wiley C. Page's invitation, Kenney attended a Growth Management Services staff meeting pertaining to GJR's second application, even though attendance at such a meeting does not fall within Kenney's job responsibilities and she had never previously been invited to attend one.

GJR also alleges that before the appeal of its second application to the Board of County Commissioners, Kenney asked Lee to order a U.S. Department of Agriculture soil analysis of GJR's property at the behest of another Perdido Key resident who opposed the project. The resident had attempted to obtain such an analysis on his own, but was informed that only the landowner or a county commissioner could request one. GJR claims that Kenney asked Lee to order such an analysis at the request of the resident.

B.   W.A. "BUCK" LEE

Defendant Lee is an Escambia County Commissioner. Lee neither represented nor resided on Perdido Key, but he spoke out against the project at the Zoning Board hearing on GJR's second application despite the fact that as a county commissioner

4

he would hear any appeal of the Zoning Board's decision. Lee also ordered a Department of Agriculture soil analysis of GJR's property, the results of which he then distributed to his fellow commissioners. GJR also alleges that Lee distributed numerous letters from Perdido Key residents opposed to the project to his fellow county commissioners, and only recused himself from the appeal proceeding at GJR's objection.

## C.     WILEY C. PAGE

Page is the director and supervisor of the Escambia County Department of Growth Management Services ("GMS"). GJR alleges that before the submission of its first application for development Page directed the GMS staff to misrepresent the development requirements for a C-1 district and to inform GJR that it could develop a campground on the property only as a special exception and PUD, not as a permitted use. GJR also alleges that in response to the significant public outcry against the project, Page directed the GMS staff to review GJR's first application more strictly than other development applications filed in Escambia County.

Regarding the second application, GJR alleges that Page expressly invited Kenney to attend the GMS staff meeting, knowing that she opposed the project and that attendance at such a meeting did not fall within her responsibilities as Lee's assistant. Following the meeting, Page informed GJR that even though the GMS staff

5

recommended approval of the second petition, he would recommend that the Zoning Board deny the application. He further informed GJR that in order to obtain a permit, it would have to appear before the Zoning Board in person to plead its case and persuade the Board to award the permit. GJR claims that Page inappropriately presented county commissioners with additional letters from Perdido Key residents opposed to the project as part of the record on appeal and invited BCC members to contact him for further information regarding residents' remarks about the project. Finally, GJR asserts that Page "administratively 'rejected'" its third application out of hand. (R.1-1 at 16.)

### D. LISA MINSHEW

Minshew is an attorney retained by Escambia County for land use matters. GJR alleges that Minshew initially advised the GMS staff to reject GJR's application, stating that GJR was an "out-of-state developer" and noting the Perdido Key residents' considerable hostility to the project. GJR contends that Minshew gave the GMS staff erroneous and misleading instructions regarding the prerequisites for approval of GJR's petition. Further, GJR avers, it was "standard procedure" to submit incomplete permit applications to the Zoning Board for approval, but Minshew advised the GMS staff not to do so with GJR's incomplete permit application.

6

GJR also asserts misconduct on Minshew's part at the Zoning Board hearing, alleging that Minshew coerced a GMS staff member into making false statements to the Board regarding the applicable criteria for approval of the project. In addition, GJR contends that after the formal presentation and comment period, Minshew engaged in an *ex parte* communication with Zoning Board members which prompted them to "summarily reject" the second application. Finally, GJR alleges that Minshew attempted to introduce erroneous and misleading material into the official record at the BCC appeal and knowingly misstated the applicable law to the commissioners.

## II. PROCEDURAL HISTORY

Following the approval of its fourth application, GJR filed this suit against Escambia County, Minshew, Lee, Page, and Kenney. GJR's "First Cause of Action" alleges that the defendants individually violated GJR's constitutional rights, asserting claims under 42 U.S.C. § 1983. Its "Second Cause of Action" contends that the defendants conspired to violate the same rights and also seeks relief under § 1983.[4] The "Third Cause of Action" alleges that Escambia County took GJR's property without just compensation in violation of the Fifth and Fourteenth Amendments. GJR claims as damages unnecessary fees, taxes and insurance premiums, lost profits, and

---

[4]It is black-letter law that § 1983 is not itself a source of substantive rights. *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

7

increased costs resulting from the delay it incurred in getting its permit application approved.

All defendants moved to dismiss, claiming, *inter alia*, qualified immunity from GJR's suit. The district court turned to *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208 (11th Cir. 1995), which enumerates four possible types of constitutional challenges applicable to a zoning decision: "(1) just compensation takings, (2) due process takings, (3) substantive due process, . . . and (4) equal protection." *Id.* at 1211 n.1 (citing *Eide v. Sarasota County*, 908 F.2d 716, 720 (11th Cir. 1990)). The court concluded that allegations supporting any one of these four claims would defeat a motion to dismiss under 12(b)(6). The district court divined an equal protection claim from two allegations buried in the middle of GJR's exhaustive and rambling recitation of the events: an allegation that GJR's development applications had been subjected to stricter analysis *vis-à-vis* other unspecified development applications filed in Escambia County, and an allegation that GJR had been required to present its application to the Zoning Board directly, unlike other developers in Escambia County. Based on these allegations, the district court held that it could not conclude as a matter

8

of law that defendants' actions did not violate GJR's equal protection rights, and denied defendants' 12(b)(6) motions.[5]

The district court reviewed the defendants' qualified immunity arguments with respect to the equal protection claim it found in its 12(b)(6) analysis. It concluded that GJR had alleged a violation of a clearly established constitutional "right to be treated equally in its application for a development permit," (R.2-83 at 10), finding authority for the existence of such a right in *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990). However, the district court stated that it could not determine whether a genuine issue of fact existed as to whether GJR's rights in this respect had been violated.[6] It therefore denied the defendants' motions to dismiss and permitted discovery with respect to the qualified immunity question. Page subsequently moved for reconsideration or clarification of the district court's order with respect to other claims in the complaint, specifically substantive due process. On reconsideration, the

---

[5]This ruling seems based on the idea that a party who cannot successfully assert qualified immunity as to one of several claims in a complaint is foreclosed from asserting qualified immunity to *any* of the claims. This notion is erroneous, as we discuss in Part V.B.3., *infra*.

[6]It is unclear why the district court made any determination with respect to issues of material fact. The defendants moved to dismiss GJR's complaint under Fed R. Civ. P. 12(b)(6), not for summary judgment under Rule 56. Thus, the appropriate inquiry was whether GJR's complaint sufficiently stated a claim, not whether material issues of fact existed. *See, e.g., Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). While Rule 12 provides that a 12(b)(6) motion to dismiss shall be treated as a Rule 56 summary judgment motion if a movant presents matters outside the pleading to the court, it does not appear that the defendants presented such material in their motions to dismiss, and the district court's order does not indicate that it in fact utilized this provision of Rule 12 in ruling on the motions.

court dismissed GJR's substantive due process claim with prejudice. Kenney, Lee, Minshew, and Page appeal from the district court's order denying their motions to dismiss with respect to the equal protection claim.

## III. ISSUE ON APPEAL

The issue we address on appeal is whether the district court erred in dismissing defendants' motions to dismiss on the ground of qualified immunity, based on its determination that GJR's complaint alleged a violation of a clearly established equal protection "right to be treated equally in its application for a development permit." (R.2-83 at 10.)

## IV. CONTENTIONS OF THE PARTIES

Primarily, the defendants contend that the district court erred in holding that GJR's complaint alleged an equal protection violation. The court analyzed GJR's claims under a "rational basis" standard applicable to facial challenges to legislation, but the defendants argue that GJR's complaint at most makes out an "as applied" challenge. They contend that the court instead should have determined whether the complaint sufficiently alleged the discriminatory application of a facially neutral law, *see E&T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987), and that GJR's complaint fails so to allege. Only Minshew addresses GJR's Fifth Amendment takings claim, arguing that it fails in two respects: (1) GJR failed to exhaust its

10

available state court remedies, and (2) the denial of the development permit did not constitute a taking, as it did not deprive GJR of all viable economic use of the Perdido Key property.

Finally, the defendants contend that the failure of GJR's substantive claims dooms its § 1983 conspiracy claim, as a plaintiff may only maintain a § 1983 conspiracy action if it first demonstrates an underlying constitutional violation. In the alternative, defendants argue that the allegations supporting the existence of a conspiracy are conclusory at best, and the district court should have dismissed the conspiracy claim on this basis regardless of its determination of the merits of the substantive claims.

GJR agrees that any equal protection claim in its complaint should be analyzed as an "as applied" challenge, but contends that its pleading sufficiently makes out such a claim. GJR argues that its complaint alleges that it is situated similarly to all other owners of C-1 zoned property who have applied for a permit to develop their land for a permitted use. In addition, it contends that the complaint "adequately identified [GJR] as part of a group against which [the defendants] purposefully discriminated — nonresidents of Florida." Appellee's Brief at 28. As to the Fifth Amendment takings claim, GJR asserts that this claim is only against the county, and not any of the individual defendants. The county is not a party to this appeal, thus, GJR argues, any

11

resolution of the merits of the just compensation claim is improper at this stage of the litigation. Finally, GJR argues that the district court did not err in refusing to dismiss the conspiracy claim, as the complaint sufficiently alleged both substantive constitutional violations and a conspiracy among the defendants.

## V. DISCUSSION

### A. JURISDICTION

Before turning to the merits of this appeal, we briefly address the issue of this court's jurisdiction over this interlocutory appeal. We earlier requested the parties to brief the jurisdictional question; after receiving the parties' responses, we ruled that the issue would be carried with the case. Upon further consideration we find that this court has jurisdiction over the appeal.

While it is true that the district court could not determine whether a genuine issue of material fact existed with respect to whether defendants' conduct violated clearly established law,[7] that conclusion alone does not preclude interlocutory appellate review of the denial of a motion to dismiss on qualified immunity grounds. The Supreme Court clarified this issue in *Behrens v. Pelletier*, ___ U.S. ___, 116 S. Ct. 834 (1996) (limiting *Johnson v. Jones*, 515 U.S. 304, 115 S. Ct. 2151 (1995)), rejecting the contention that the existence of material issues of fact in itself bars

---

[7]Again, we are unsure why the district court made this determination. *See supra* note 6.

12

interlocutory review of accompanying issues of law. *See id.* at ___, 116 S. Ct. at 842

. We reiterated this point in *Cottrell v. Caldwell*, 85 F.3d 1480 (11th Cir. 1996),

stating, "[A]s clarified by *Behrens*, *Johnson* [*v. Jones*] does not affect our

interlocutory jurisdiction in qualified immunity cases where the denial is based even

in part on a disputed issue of law." *Id.* at 1485.

In addition to finding that issues of material fact existed, the district court found

that GJR's complaint alleged the violation of a clearly established "right to be treated

equally in its application for a development permit." (R.2-83 at 10.) This is an issue

of law disputed by the parties on appeal, and we therefore have jurisdiction to review

the district court's ruling on this issue under *Behrens* and *Cottrell*. *Cf. Bennett v.*

*Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990) (petitioner failed as a matter of law to

sufficiently allege a constitutional violation, therefore existence of disputed issues of

material fact does not affect interlocutory jurisdiction). However, our appellate

jurisdiction in matters such as this extends only to the legal issues surrounding the

district court's denial of defendants' motions to dismiss, *i.e.*, issues concerning

whether GJR's complaint sufficiently alleged the violation of a clearly established

right. *See Marx v. Gumbinner*, 855 F.2d 783, 791 n.15, 792 n.16 (11th Cir. 1988).

B.    QUALIFIED IMMUNITY

1.    *Background Law*

Defendants argue that they are entitled to qualified immunity from GJR's claims.  The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation.  The defense embodies an "objective reasonableness" standard, giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them.  Qualified immunity thus represents the rule, rather than the exception:  "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A&M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).

Under the qualified immunity doctrine, government officials performing discretionary functions[8] are immune not just from liability, but from *suit*, unless the conduct which is the basis for suit violates "clearly established [federal] statutory or

---

[8]The parties do not dispute that the defendants were acting within their discretionary authority at all relevant times.

14

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). For a right to be "clearly established," previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1986).

At this stage in the proceedings, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined. *See Wooton v. Campbell*, 49 F.3d 696, 699 (11th Cir.), *reh'g denied*, 58 F.3d 642 (11th Cir.), *cert. denied*, ___ U.S. ___, 116 S. Ct. 379 (1995). The Supreme Court has held that a "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly established federal right is "the determination of whether the plaintiff has asserted a violation of a constitutional right *at all*." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793 (1991) (emphasis added). If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a "clearly established" right.

The determination of whether a complaint sufficiently states a claim is a matter of law that we review *de novo*. *See Harper v. Thomas*, 988 F.2d 101, 103 (11th Cir. 1993). In so doing, we use the same standard as the district court, accepting all

15

allegations as true and construing facts in a light most favorable to the plaintiff. *See, e.g.*, *Stephens v. Department of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). However, while Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992) (citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir. 1989)). Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violate a clearly established right. Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement. *See id.*

2.    *GJR's Equal Protection Claim*

We conclude that GJR's complaint fails to pass the first part of the qualified immunity inquiry. It simply fails to state an equal protection claim, even without the additional hurdle of the heightened pleading standard. The words "equal protection"

16

do not appear *anywhere* in the complaint.[9] GJR's claims for relief under § 1983 do not allege unequal treatment or discriminatory motive on the part of the defendants. Even when viewed in the light most favorable to GJR, the most the complaint alleges is that GJR had to jump through a few more procedural hoops than unspecified other permit applicants before it eventually received its permit. As we conclude that the complaint fails to allege that GJR's equal protection rights were violated at all, we need not focus on the conduct of the individual defendants.[10]

All of the parties contend, and we agree, that the complaint challenges Escambia County's zoning regulations not on their face, but as applied to GJR. Therefore, the district court's use of the "rational basis" standard was improper; it should have determined whether GJR sufficiently alleged (1) that it was treated differently from similarly situated persons, and (2) that the defendants unequally applied the Escambia County zoning laws for the purpose of discriminating against

---

[9]In *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990), the case upon which the district court relied to find the existence of a clearly established right to be treated equally in the application for a zoning permit, we noted that the absence of the words "taking" and "eminent domain" from a plaintiff's complaint and pre-trial stipulation foreclosed the possibility that the plaintiff had made out a due process takings claim. *See id.* at 723.

[10]As an additional matter, the holding in this case obviates the need to reach the question of whether our decision in *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990), clearly established a Fourteenth Amendment right to be treated equally in the application for a permit.

17

GJR.  *See, e.g., Snowden v. Hughes*, 321 U.S. 1, 6, 64 S. Ct. 397, 401 (1944); *Strickland v. Alderman*, 74 F.3d 260, 264 & n.4 (11th Cir. 1996).

GJR's complaint fails on both counts.  With regard to the "similarly situated" prong, the complaint does not present a single instance in which a similarly situated developer was granted a permit; it merely alleges that nameless, faceless "other" permit applicants were given better treatment.  Bare allegations that "other" applicants, even "all other" applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these "other" applicants were situated similarly to the plaintiff.  In its brief GJR attempts to cure the defects in its complaint by arguing that the complaint can be read to state that GJR was treated differently from *all other* owners of C-1 property.  We decline to accept such a tortured reading of the complaint.  GJR's argument is neither persuasive nor timely; a motion to dismiss attacks a complaint on its face, and on the plain face of GJR's complaint we find no such allegations of dissimilar treatment.

GJR's allegations of discriminatory intent are deficient in much the same way, using many broad pejorative words to describe the defendants' intentions without giving any specifics.  In its brief GJR cites *Snowden v. Hughes* for the proposition that a practice need not be systematic or long-continued to constitute discrimination.

18

While this is true, immediately following the passage cited in GJR's brief the *Snowden* Court also noted:

> The lack of any allegations in the complaint . . . tending to show a purposeful discrimination . . . is not supplied by the opprobrious epithets "willful" and "malicious" . . . , or by characterizing [the defendant's actions] as an unequal, unjust, and oppressive administration of the laws . . . . These epithets disclose nothing as to the purpose or consequence of [the defendant's actions]. . . . Such allegations are insufficient under our decisions to raise any issue of equal protection of the laws . . . .

*Snowden*, 321 U.S. at 10, 64 S. Ct. at 402. GJR's allegations that the defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual," (R.1-1 at 18), are uncannily similar to those the Supreme Court rejected in *Snowden*, and are insufficient for much the same reason.

The district court's error in finding an equal protection claim probably stemmed at least in part from the difficulty in deciphering GJR's complaint, which unfortunately is a classic example of what is referred to in this circuit as a "shotgun pleading." *See, e.g.*, *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1483-84 (11th Cir. 1992); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991). The complaint presents scores of allegations regardless of their relevance and incorporates them in their entirety into several counts asserting discrete claims for relief, each of which contains several references to haphazardly described constitutional "rights." For

19

example, the "First Cause of Action" of the complaint refers to GJR's "general right to be free from abuses of governmental power worthy of constitutional protection," (R.1-1 at 18), but fails to identify where in the Constitution this particular right may be found. In another instance, GJR accuses the defendants of "conspir[ing] to use *unlawfully legal processes* to prevent Plaintiff's development of its Property." (R.1-1 at 19; emphasis added.) In analyzing the complaint, we are confronted as the district court was with the difficulty of ascertaining the outlines of GJR's claims; it is unclear from the complaint exactly which of GJR's constitutional rights it feels the defendants have violated. Determining which factual allegations are relevant to which claim is practically impossible, as is matching specific acts of the defendants to violations of GJR's rights.

We stress at this point, as we did in *Oladeinde*, *see* 963 F.2d at 1485, that the heightened pleading requirement is the law of this circuit. The district court was far too lenient with GJR's shotgun complaint; application of the heightened pleading standard is one way to deal summarily with pleadings of this kind. Although the Supreme Court has held that courts may not impose a heightened pleading requirement in § 1983 cases involving municipalities, *see Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 167-68, 113 S. Ct. 1160, 1162 (1993), the Court specifically declined to extend its holding to cases

involving individual government officials, *see id* at 167, 113 S. Ct. at 1162, and we likewise decline to do so here.

Having given up, it seems, on determining which claims GJR actually raised in its complaint, the district court turned to *Restigouche* which lists four possible constitutional challenges to a zoning: "(1) just compensation takings, (2) due process takings, (3) substantive due process, . . . and (4) equal protection." *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1211 (11th Cir. 1995). The court stated that "[a]llegations showing that any one of the four grounds may have been violated will defeat a motion to dismiss," (R.2-83 at 7-8), and found that GJR's complaint successfully alleged an equal protection claim. In doing so, the district court went beyond the permissible boundaries of Fed. R. Civ. P. 8, in effect supplying GJR with an equal protection claim when none was evident on the face of the complaint.

Rule 8 requires that federal courts give pleadings a liberal reading in the face of a 12(b)(6) motion to dismiss. This admonition is particularly true when the parties are proceeding *pro se*. Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. *See, e.g., Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, *see Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991), or to rewrite an otherwise deficient

21

pleading in order to sustain an action, *see Pontier v. City of Clearwater*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995). GJR was represented by counsel; it was not necessary for the court to read GJR's complaint with such indulgence.

Reading complaints with this level of indulgence is particularly troublesome when defendants raise the issue of qualified immunity. As we mentioned earlier, qualified immunity protects officials not just from liability, but from suit and its attendant burdens, allowing them to perform their official functions without the threat of retaliatory nuisance suits. Every successive stage to which a suit progresses reduces the effectiveness of the defense, requiring officials to spend time at the courthouse rather than the statehouse. The defense becomes useless if an official's motion to dismiss covers all of the claims reasonably apparent from a plaintiff's complaint, but the district court divines another claim by which the plaintiff may defeat qualified immunity. The Supreme Court noted the hazards of this approach:

> Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. [*Harlow v. Fitzgerald*'s rule] would be transformed from a guarantee of immunity into a rule of pleading.

*Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 3039 (1986). We also have recognized this danger, noting that "a plaintiff must not be permitted, through

22

the use of the kind of 'shotgun' pleading tactic evident here, to strip government officials of the protection provided by the official immunity doctrine." *Marx v. Gumbinner*, 855 F.2d 783, 792 (11th Cir. 1988).

"Among the cardinal principles of our Anglo-American system of justice is the notion that the legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded *sua sponte* by the trial judge." *Doubleday & Co. v. Curtis*, 763 F.2d 495, 502 (2d Cir. 1985). A district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity. To do so is to ignore both the heightened pleading standard for § 1983 claims that is the law of this circuit and the Supreme Court's call for a "firm application of the Federal Rules of Civil Procedure" in cases where qualified immunity is asserted. *Butz v. Economou*, 438 U.S. 478, 508, 98 S. Ct. 2894, 2911 (1978). The district court transgressed both of these principles in divining an equal protection claim from GJR's complaint.

### 3. *GJR's Other Claims*

The district court also erred in declining to determine whether the defendants had immunity from all of GJR's claims against them. In analyzing GJR's complaint, the district court stated that "[a]llegations showing that any one of the four grounds [identified in *Restigouche* for challenging a zoning decision] may have been violated

23

will defeat a motion to dismiss." (R.2-83 at 7-8.) While it is true that allegations sufficient to overcome a qualified immunity defense will keep a case in court, this did not entitle the district court to limit its analysis to an equal protection claim. The court should have proceeded to determine whether the individual defendants had qualified immunity with respect to GJR's remaining claims. As we previously stated, qualified immunity is a defense not only from liability, but from suit, which makes it important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. *See Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1184 (11th Cir. 1994). A district court's refusal to address claims possibly barred by qualified immunity effectively denies defendants immunity from suit on those claims. *Cf. Collins v. School Bd.*, 981 F.2d 1203, 1205 (11th Cir. 1993) (defendants entitled to immediate appeal from denial of summary judgment based on qualified immunity, even if plaintiff has other claims pending).

Thus, we now address the remainder of GJR's complaint. Upon further examination, the only claims against the defendants that even come close to being sufficient are: (1) a substantive due process claim and (2) a Fifth Amendment just compensation claim. The district court dismissed the substantive due process claim with prejudice upon reconsideration, and GJR does not challenge this ruling on appeal. As for the just compensation claim, in its "First Cause of Action" GJR alleges

24

that it has a "right not to have its property taken without payment of just compensation," (R.1-1 at 18), after which it claims that the actions of all defendants deprived it of "rights, privileges or immunities secured to [it] by the U. S. Constitution." (R.1-1 at 18.)   This would seem to intimate a just compensation claim against the defendants; Minshew, in fact, attempted to answer such a claim in her brief.  However, in its brief GJR asserts that the complaint does not assert a just compensation claim against the individual defendants.  *See* Appellee's Brief at 45. We will not discern a claim that the plaintiff itself claims does not exist in its complaint.

GJR's "Second Cause of Action," also a § 1983 claim, alleges a conspiracy among the defendants to violate GJR's constitutional rights.  *See generally Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (stating theoretical basis of and requirements for stating a claim under § 1983 of conspiracy to violate constitutional rights).  However, to sustain a conspiracy action under § 1983 (as distinguished from § 1985[11]) a plaintiff must show an underlying actual denial of its constitutional rights. *See Slavin v. Curry*, 574 F.2d 1256, 1262 (5th Cir.), *modified on denial of r'hrg*, 583 F.2d 779 (5th Cir. 1978).  As we have stated, GJR's complaint does not sufficiently

---

[11]As GJR does not allege that the defendants' actions stemmed from racial or class-based animus, it can not satisfy the essential elements of a § 1985 conspiracy action.  *See Lucero v. Operation Rescue*, 954 F.2d 624, 628 (11th Cir. 1992).

allege that *any* of its constitutional rights have been violated. Moreover, the complaint fails to make any particularized allegation that a conspiracy existed, another prerequisite of a § 1983 conspiracy claim. *See Phillips v. Mashburn*, 746 F.2d 782, 784 (11th Cir. 1984). As we can find no sufficiently pled federal claims in the complaint that could serve to abrogate defendants' qualified immunity, it follows that the district court erred in denying defendants' motions to dismiss on those grounds.

CONCLUSION

At oral argument, counsel for GJR stated that the events surrounding GJR's attempt to build an RV park on Perdido Key represented the most egregious abuse of zoning law he had seen in his 30-year career. Whether or not that is so, the allegations of this complaint entitle GJR to no relief against these individual defendants. For the reasons stated in this opinion, we conclude that the district court erred in finding that GJR's complaint sufficiently alleged a violation of its constitutional rights. Accordingly, we reverse the district court's denial of the individual defendants' motions to dismiss on qualified immunity grounds and remand to the district court with instructions to enter judgment dismissing with prejudice the damage claims against the individual defendants.

REVERSED AND REMANDED.