United States Court of Appeals,

Eleventh Circuit.

No. 95-8107.

Robert D. MASTROIANNI, Plaintiff-Appellee,

v.

Michael J. BOWERS, Patrick D. Deering, et al., Defendants-Appellants.

Nov. 13, 1998.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV293-88), Anthony A. Alaimo, Judge.

ON PETITION FOR REHEARING

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and GODBOLD, Senior Circuit Judge.

HATCHETT, Chief Judge:

On petition for rehearing, we file this revised opinion.

BACKGROUND

Appellants Michael J. Bowers, former Attorney General of Georgia, Patrick D. Deering, Assistant Attorney General of Georgia, and Georgia Bureau of Investigation (GBI) Agents Joe B. Jackson, Jr., Weyland Yeomans, and Lee J. Sweat, Jr. conducted an investigation into alleged misconduct of Camden County Sheriff William E. Smith and Deputy Sheriff Robert Mastroianni. Bowers supervised the investigation that lasted from the spring of 1991 to the summer of 1992. The investigation of Mastroianni stemmed from allegations that he planted drugs on criminal suspects and then falsely arrested them. Mastroianni believed, however, that the purpose of the investigation was to damage the reputation of Sheriff Smith's department.

On July 1, 1992, Deering filed a notice of indictment against Mastroianni, and grand jury proceedings occurred on July 16 and 17. The grand jury indicted Mastroianni on one count for

planting drugs on and falsely arresting Leo Polumbo. Law enforcement officials arrested Mastroianni on July 17 and took him to the Glenn County Jail where he was booked and subsequently released on a $5,000 bond the same day. Mastroianni was on bond with restricted freedom of movement until April 9, 1993, when Deering and Bowers formally declared that they would not seek to prosecute Mastroianni.

On June 29, 1993, Mastroianni filed a complaint in the Southern District of Georgia against Bowers, Deering, Yeomans, Jackson, and Sweat (appellants) for allegedly violating the Civil Rights Act of 1871, 42 U.S.C. § 1983.[1] Mastroianni sought compensatory and punitive damages. In his complaint, Mastroianni alleged (1) that appellants conspired to violate his constitutional rights to be free from malicious prosecution; (2) bad-faith prosecution; (3) abuse of process; (4) knowing use of false and perjured testimony; (5) deprivation of a fair trial; and (6) false arrest. Mastroianni claimed that the appellants violated his civil rights because he refused to assist them with an ongoing investigation of Sheriff Smith. Appellants filed a motion to dismiss on August 2, 1993, and on September 20, 1993. The district court granted appellants' motion to dismiss with respect to Mastroianni's claims for deprivation of fair trial, use of false and improperly obtained evidence and use of perjured testimony. The district court reasoned that Mastroianni could not maintain a fair trial claim in the absence of a trial.

The district court dismissed the claims for use of false and improperly obtained evidence and perjured testimony because it determined that those claims were indistinguishable from claims of malicious prosecution, abuse of process and false arrests. The district court, however, denied the

---

[1]Mastroianni subsequently moved to have Sweat dismissed from this action. The district court granted Mastroianni's motion on July 20, 1994.

appellants' motion to dismiss with respect to Mastroianni's constitutional claims in the nature of malicious prosecution, abuse of process, false arrest, false imprisonment and conspiracy to commit the same. The district court found that Mastroianni had pleaded sufficient facts to state a claim upon which relief could be granted.

In September 1994, appellants filed a motion for summary judgment claiming that they were entitled to both qualified and absolute immunity. The district court denied appellants' motion for summary judgment on the claims for false arrest and conspiracy to commit false arrest, but granted their motion on the claims for false imprisonment, abuse of process, malicious prosecution and conspiracy to commit the foregoing. The district court held that Mastroianni's claims of false imprisonment and malicious prosecution were part of his broader claim of false arrest. The district court also found that the tort of "abuse of process" was not clearly established law in this circuit at the time of the arrest. The district court, viewing the facts in the light most favorable to Mastroianni, found that the appellants were not entitled to qualified immunity for their arrest of Mastroianni because "clearly established law dictate[d] that [appellants] acted without arguable probable cause." This appeal is from the denial of the summary judgment motion based on absolute and qualified immunity.

CONTENTIONS

First, appellants Deering and Bowers contend that they are entitled to absolute immunity because their conduct fell within the scope of their prosecutorial duties. They assert that absolute immunity for some of their conduct extends to cover all of their conduct relating to seeking an indictment against Mastroianni. Similarly, Yeomans contends that he is entitled to absolute immunity for his testimony before the grand jury. Second, appellants contend that even if absolute

3

immunity does not protect them, they are entitled to qualified immunity because they did not violate any clearly established law in arresting Mastroianni. Third, appellants contend that the intervening act of the grand jury indictment breaks the chain of causation with respect to any alleged illegal conduct and shields all of them from liability on Mastroianni's false arrest claim. Fourth, appellants contend that Mastroianni failed to present evidence sufficient to support his conspiracy claim.

First, Mastroianni contends that even though Deering, Bowers and Yeomans enjoy absolute immunity for some of their activity, they are not entitled to absolute immunity for actions that were not intimately associated with the judicial phase of the criminal process. Second, Mastroianni contends that none of the appellants are entitled to qualified immunity because no reasonable officer could have believed that his arrest of Leo Polumbo was illegal and therefore legally sufficient basis existed for Mastroianni's arrest. Third, Mastroianni contends that since evidence exists showing misdirection of the grand jury, the grand jury indictment did not break the chain of causation with respect to the appellants' initial illegal conduct of conspiring to violate his constitutional rights. Fourth, Mastroianni contends that his conspiracy claim was both legally and factually sufficient to survive the appellants' summary judgment motion.

## ISSUES

We address the following issues:

(1) whether Deering, Bowers and Yeomans's entitlement to absolute immunity for some of their conduct shields them for all of their actions relating to the arrest of Mastroianni;

(2) whether all of the appellants are entitled to qualified immunity on Mastroianni's claim for false arrest;

4

(3) whether the intervening act of the grand jury broke the chain of causation removing the taint of any earlier misconduct;  and

(4) whether Mastroianni alleged and established sufficient facts to withstand appellants' summary judgment motion on the conspiracy to commit false arrest claim.

DISCUSSION

I. Denial of summary judgment

We review denial of summary judgment motions *de novo.  Swint v. City of Wadley,* 51 F.3d 988, 994 (11th Cir.1995).

When a lower court denies a motion for summary judgment based on qualified immunity, this court has interlocutory appellate jurisdiction.  *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  According to *Mitchell,* this court may properly entertain an interlocutory appeal from a district court's denial of a defendant's motion for summary judgment when (1) the defendant is a public official claiming qualified immunity as a defense, and (2) the issue on appeal is whether the facts, viewed in the light most favorable to the plaintiff, show a violation of clearly established law.  *Mitchell,* 472 U.S. at 528, 105 S.Ct. 2806.  This court also has appellate jurisdiction over denials of summary judgment based on absolute immunity.  *Winfrey v. School Bd. of Dade County,* 59 F.3d 155, 158 (11th Cir.1995).  Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).

II. Absolute immunity

Appellants Bowers and Deering claim they are entitled to absolute immunity because they are prosecutors, and their conduct in initiating the prosecution and seeking the indictment against

5

Mastroianni is absolutely immune from suit. Similarly, appellant Yeomans asserts that his act of testifying before the grand jury is entitled to absolute immunity. Furthermore, Bowers, Deering and Yeomans argue that the shield of absolute immunity protects them from any liability for all of their actions leading to the indictment and arrest of Mastroianni because their conduct fell within the "band of prosecutorial immunity." We disagree.

Absolute immunity, notwithstanding its connotation, does not protect prosecutors for all of their actions performed as prosecutors. *E.g., Burns v. Reed,* 500 U.S. 478, 493, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Rather, the protection of absolute immunity is contingent on the "function" the prosecutors are performing and not their status as prosecutors. In *Burns,* the Supreme Court clarified the scope of absolute immunity's protection when it found that activities not "intimately associated with the judicial phase of the criminal process" are not entitled to absolute immunity. *Burns,* 500 U.S. at 493, 111 S.Ct. 1934 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); *compare Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 2616-2617, 125 L.Ed.2d 209 (1993) (finding that absolute immunity does not protect prosecutors for fabrication of evidence during the investigative stage or for making statements to the media).

In determining whether prosecutors are entitled to absolute immunity, it is important to distinguish between prosecutors' role as an "advocate" for the state versus their role as an administrator or investigative officer. When prosecutors are engaged in activities intimately associated with the judicial phase of the criminal process such as initiating a prosecution or presenting the state's case, then they are acting as advocates of the state and are entitled to absolute immunity for that conduct. *Buckley,* 113 S.Ct. at 2616, 113 S.Ct. 2606; *Burns,* 500 U.S. at 493, 111 S.Ct. 1934. Prosecutors are not entitled to absolute immunity, however, for activities not intimately

6

associated with the judicial process such as giving advice to police during the preliminary investigative stage, *Burns,* 500 U.S. at 493, 111 S.Ct. 1934, or fabricating evidence during the preliminary investigative stage to present to a grand jury or making comments to the press, *Buckley,* 509 U.S. 259, 113 S.Ct. at 2616-2617. Therefore, our determination of whether prosecutors are entitled to absolute immunity hinges on the function they are performing.[2]

Likewise, we note that witnesses testifying in judicial proceedings are also protected for their conduct. When persons testify before a grand jury, they are entitled to absolute immunity for testimony provided during the grand jury proceedings. *Strength v. Hubert,* 854 F.2d 421, 424-25 (11th Cir.1988).

A. Deering and Bowers

The district court granted appellant Deering absolute immunity for his action in filing a notice of indictment against Mastroianni.[3] The district court also extended absolute immunity to Deering for his grand jury testimony on July 16 and 17, 1992. The district court decided, however, that none of the appellants' other acts as alleged in Mastroianni's complaint was entitled to absolute immunity. Mastroianni claimed that both Deering and Bowers provided legal advice to Jackson and Yeomans during the preliminary investigation of Mastroianni and provided advice to them prior to presenting their case to the grand jury. Mastroianni asserted that during the preliminary

---

[2]The *Burns* decision aptly recognized the anomaly inherent in suggesting that courts should extend absolute immunity to all actions of prosecutors such as giving legal advice to police while only providing qualified immunity to the police officers for following that same advice. *Burns,* 500 U.S. at 495, 111 S.Ct. 1934.

[3]The district court did not explain its disposition of Bowers's claim for absolute immunity. Therefore, to the extent that Bowers was involved in filing the notice of indictment or presenting evidence against Mastroianni, we find that Bowers was entitled to absolute immunity for that conduct. *Burns,* 500 U.S. at 493, 111 S.Ct. 1934.

investigative stage Bowers, Deering, Jackson, and Yeomans conspired (1) to coerce Mastroianni into testifying against his superior, Sheriff Smith; (2) to fabricate evidence against Mastroianni; and (3) to present fabricated evidence to secure Mastroianni's arrest in the event Mastroianni refused to cooperate with them.[4]

As previously discussed, prosecutorial functions not intimately associated with the judicial phase of the criminal process are not entitled to absolute immunity. *Buckley,* 509 U.S. 259, 113 S.Ct. at 2616; *Burns,* 500 U.S. at 493, 111 S.Ct. 1934. Therefore, the absolute immunity protection that Deering and Bowers received for initiating the prosecution and presenting the state's case against Mastroianni does not relate backwards to shield their preliminary activity of giving advice to Jackson and Yeomans or for allegedly conspiring to bring about Mastroianni's arrest unless he cooperated with them. *Buckley,* 509 U.S. 259, 113 S.Ct. at 2616; *Burns,* 500 U.S. at 478, 111 S.Ct. 1934. This circuit has recognized that providing absolute immunity to officials for one aspect of a claim against them does not necessarily extend the protection of absolute immunity to other claims against them. *Strength,* 854 F.2d at 425 (finding that providing absolute immunity to a witness for grand jury testimony does not necessarily protect the witness for alleged pretestimonial acts in furtherance of a conspiracy).

The appellants urge this court to find that since they have absolute immunity for some of their actions, then their entitlement to absolute immunity should shield them from any liability for their alleged conspiracy to violate Mastroianni's rights. We hold that neither Deering nor Bowers is entitled to absolute immunity for alleged involvement in conspiring with Jackson and Yeomans

---

[4]The record shows that Deering and Bowers provided legal advice to the GBI agents investigating Mastroianni prior to the initiation of grand jury proceedings. Moreover, Bowers personally supervised the investigation.

to bring about Mastroianni's arrest because of his refusal to assist in their investigation of Sheriff Smith. We find that genuine issues of material fact exist surrounding Deering and Bowers's alleged conduct prior to the judicial phase of the criminal process. Therefore, the district court properly denied summary judgment based on absolute immunity.

B. Yeomans

The district court ruled that Yeomans was entitled to absolute immunity for his testimony before the grand jury on July 16 and 17, 1992. Although Yeomans received absolute immunity for his grand jury testimony, that immunity does not reach back to protect him for any activities he allegedly engaged in prior to taking the witness stand for his grand jury testimony. *See Strength v. Hubert,* 854 F.2d at 425. In *Strength,* the court stated that the determination that a witness has absolute immunity from civil liability based on the witness's grand jury testimony does not end the court's inquiry. *Strength,* 854 F.2d at 425. The court went on to state that pretestimonial acts in the furtherance of an alleged conspiracy may form the basis for a cause of action under section 1983 for deprivation of constitutional rights. *Strength,* 854 F.2d at 425. Therefore, even though Yeomans is entitled to absolute immunity for his testimony before the grand jury, that immunity cannot extend backwards to protect him for his alleged involvement in conspiring to violate Mastroianni's constitutional rights. *Strength,* 854 F.2d at 425; *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

Mastroianni alleged that in October 1991, Jackson and Yeomans met with him at the GBI office and threatened to indict him if he did not give them "something" on Sheriff Smith. Moreover, Mastroianni claimed that Yeomans possessed information indicating that Mastroianni properly conducted the reverse sting operation that formed the basis for his grand jury indictment. Therefore,

9

Yeomans's false testimony before the grand jury contradicting exculpatory evidence contained in his own file suggests that he may have agreed to facilitate an illegal arrest of Mastroianni.[5] According to Mastroianni, Yeomans conspired with the other appellants to fabricate evidence to aid

[5]The appellants contend that given Yeoman's absolute immunity as a grand jury witness, any use of that testimony as evidence of unimmunized pretestimonial acts is forbidden. That is not and should not be so. The defendants are not being charged with liability for their participation in the grand jury proceedings, but for pretestimonial conduct. The grand jury testimony simply provides evidence of inconsistencies in the defendants' actions which bolster the conclusion that they were conspiring. A recent Ninth Circuit case examined this very issue. *Harris v. Roderick,* 126 F.3d 1189 (9th Cir.1997), recognized that perjured grand jury testimony was immune, but that

> the subsequent official testimony was simply a part of the implementation of that conspiracy, a step in the overall plan. We do not believe that the general policy that immunizes false official testimony requires that we preclude [plaintiff] from showing the full range of occasions on which [defendants'] falsehoods were uttered, simply because some of them occurred before a grand or petit jury.

*Harris,* 126 F.3d at 1189.

Additionally, while the Supreme Court in *Dennis v. Sparks,* 449 U.S. 24, 30, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), did hold that a judge was immune from suit based on conspiracy, the Court found that private parties who had conspired with the judge were not. The Court even anticipated that the judge might possibly have to testify about his actions—actions for which he was immune—in order to establish the conspiracy. As in the situation at hand, the grand jury testimony is immunized, but can be used as evidence of a conspiracy.

Moreover, a body of law has been established that, in the *criminal* context, creates an exception to testimonial immunity where the immunized witness lies under oath. *See United States v. Veal*, 153 F.3d 1233 (11th Cir.1998) (cases collected therein). However, the Supreme Court in *Briscoe v. LaHue,* 460 U.S. 325, 339-41, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), while limiting its holding to perjury during trial, makes a distinction in dicta between civil and criminal penalties for perjury in all judicial proceedings. The dissent posits that "[t]o assume that Congress, which had enacted a criminal sanction against state officials, intended sub silentio to exempt those same officials from the civil counterpart approaches the incredible." *Briscoe,* 460 U.S. at 362, 103 S.Ct. 1108.

10

in his prosecution.[6] Those alleged actions would not be protected under absolute immunity. Since genuine issues of material fact exist regarding Yeomans's alleged actions falling outside of the protection of absolute immunity, the district court properly denied Yeomans's motion for summary judgment based on absolute immunity.

III. Qualified immunity

A. False arrest

Qualified immunity protects government officials from liability for civil damages arising out of the government officials performing their discretionary functions as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Rogers v. Miller,* 57 F.3d 986, 988 (11th Cir.1995). Since the parties here do not dispute that the appellants were acting within the scope of their discretionary authority, we limit our discussion to determining whether the appellants' alleged actions violated clearly established constitutional law. *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir.1988). Therefore, under this analysis we review the record taken in the light most favorable to Mastroianni to determine whether a violation of clearly established law has occurred. *Bennett v. Parker,* 898 F.2d 1530, 1532, 1535 (11th Cir.1990) (Tjoflat, C.J., concurring) (when evaluating the qualified immunity defense in the context of a motion for summary judgment, the court must consider all facts fairly inferable from the record in favor of the plaintiff even if in dispute and decide whether under those facts the defendant's conduct violated law clearly established at the time), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112

---

[6]Yeomans was the GBI agent in charge of Mastroianni's investigation and in that capacity he gathered evidence to be used against Mastroianni.

L.Ed.2d 1085 (1991).  In determining whether the law was clearly established so that qualified immunity would not apply, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing' violates federal law." *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (*en banc* ) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  This does not mean that a court must have found the "very action in question unlawful." *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994).  Rather, the court must find that "in light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  The district court determined that the appellants were not entitled to qualified immunity for their arrest of Mastroianni because viewing the facts in the light most favorable to Mastroianni demonstrates they violated clearly established law in arresting Mastroianni without having arguable probable cause.

Mastroianni was arrested for violating O.C.G.A. § 16-5-42 for allegedly planting drugs on and falsely arresting Leo Polumbo.  The statute reads in part:

> When the arrest, confinement, or detention of a person by warrant, mandate, or process is *manifestly illegal* and shows malice and oppression, an officer issuing or knowingly and maliciously executing the same shall, upon conviction thereof, be removed from office and punished by imprisonment for not less than one nor more than five years.

O.C.G.A. § 16-5-42 (Michie 1988) (emphasis added). Mastroianni claims that his arrest was without arguable probable cause because he was arrested for conducting a legitimate reverse sting operation. He argues that since his reverse sting operation was legitimate his conduct could not have been "manifestly illegal" under O.C.G.A. § 16-5-42.  Under Mastroianni's version of the facts, the following occurred.  Preston Kirkland was arrested for possession of marijuana on March 5, 1991. Following Kirkland's arrest, Mastroianni enlisted Kirkland's assistance in helping to arrest a

12

suspected drug dealer, Leo Polumbo. Kirkland was released from jail on March 5, 1991, at approximately 3:00 p.m. Kirkland visited Polumbo's residence and saw marijuana in Polumbo's home. During this visit, Kirkland agreed to deliver two ounces of marijuana to Polumbo with the understanding that Polumbo would sell the marijuana for Kirkland. Kirkland then reported to Mastroianni that he observed drugs at Polumbo's residence and that Polumbo agreed to receive two ounces of marijuana.

After meeting with Kirkland, Mastroianni sought and obtained a search warrant for Polumbo's home. In furtherance of this reverse sting operation, Mastroianni picked up two ounces of marijuana from a crime laboratory in Savannah, Georgia. Mastroianni released the two plastic bags containing marijuana to Kirkland and told him to proceed with his plans to deliver the marijuana to Polumbo. Kirkland took the marijuana to Polumbo's residence, but Polumbo was not home. Kirkland left the marijuana with Polumbo's wife and informed Mastroianni that he had made the delivery. Based on this information, Mastroianni executed his search warrant upon Polumbo's home, but Polumbo was not present. Polumbo's wife was present, and during the search the officers discovered other drugs in addition to the marijuana Kirkland delivered. Mastroianni found Polumbo at another location and arrested him for possession.

Based upon the foregoing facts, we must determine whether Mastroianni's conduct provided the appellants with arguable probable cause to bring about his arrest. *Swint v. City of Wadley, Alabama,* 51 F.3d 988, 995-96 (11th Cir.1995). It is well established in this circuit that law enforcement officials may conduct reverse sting operations. *United States v. Walther,* 867 F.2d 1334, 1339 (11th Cir.1989); *Owen v. Wainwright,* 806 F.2d 1519, 1522 (11th Cir.1986); *United States v. Savage,* 701 F.2d 867, 869-70 (11th Cir.1983). In conducting reverse sting operations, law

13

enforcement officials' actions may not constitute entrapment, *Sorrells v. United States,* 287 U.S. 435, 444, 53 S.Ct. 210, 77 L.Ed. 413 (1932), or be carried out in an outrageous manner, *United States v. Russell,* 411 U.S. 423, 431, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Law enforcement officials may provide an opportunity and even facilitate the commission of a crime through artifice and stratagem in order to arrest persons engaged in criminal enterprises. *Sorrells,* 287 U.S. at 441, 53 S.Ct. 210. Law enforcement officials may not entrap those persons, however, but this court determines whether entrapment has occurred through looking to see whether a trap has been set for an unwary innocent or whether the trap was set for an unwary criminal. *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

In this case, under Mastroianni's version of the facts, we cannot find that Mastroianni entrapped Polumbo or set a trap for an unwary innocent. Prior to Mastroianni making his arrest of Polumbo, Mastroianni's informant, Kirkland, had observed drugs at Polumbo's home and had participated in prior drug transactions with Polumbo. Mastroianni merely provided an unwary criminal—Polumbo—an opportunity to continue to engage in criminal activity. We believe that in viewing the facts in the light most favorable to Mastroianni he legitimately conducted a reverse sting operation. Therefore, the appellants were aware or reasonable officers in their position would have been aware that Mastroianni's conduct was not "manifestly illegal."

The appellants argue, however, that Mastroianni's conduct was illegal because he lied in order to procure a search warrant for Leo Polumbo's residence and planted evidence.[7] The record suggests otherwise. For example, the appellants told the grand jury that Mastroianni lied to obtain

---

[7]It is important to note that in Count II of the indictment against Mastroianni, the appellants alleged that Mastroianni committed perjury to obtain a search warrant for Polumbo's residence, but the grand jury did not indict Mastroianni on this count.

14

the search warrant for Polumbo's residence because Mastroianni's informant could not have possibly observed drugs at Polumbo's residence within twenty-four hours of Polumbo's arrest because the informant was in jail. The record, however, reveals that Kirkland was out of jail the day before he noticed drugs at Polumbo's residence. Moreover, the record indicates that Mastroianni discovered other drugs and drug paraphernalia at Polumbo's home during his reverse sting operation. Perhaps a more telling blow to appellants' contention that Mastroianni lied in order to obtain his search warrant was the grand jury's refusal to indict him on Count II of the indictment for allegedly committing perjury to obtain the search warrant for Polumbo. Therefore, in viewing the facts most favorable to Mastroianni, his reverse sting operation was simply not illegal and the appellants effected his arrest knowing that his conduct was proper. This violates Mastroianni's right to be free from arrest without arguable probable cause. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1558 (11th Cir.1993).[8] Consequently, the district court properly denied appellants' motion for summary judgment based on qualified immunity.

B. Misdirection of the grand jury

The appellants claim that the grand jury indictment against Mastroianni breaks the chain of causation and protects them from liability for false arrest. Moreover, the appellants claim that it was not clearly established at the time of Mastroianni's arrest that an arrest pursuant to a grand jury indictment may violate the Fourth Amendment. Mastroianni claims, however, that the appellants made misrepresentations to the grand jury, and therefore, the grand jury indictment did not establish

---

[8]This finding does not mean that the appellants actually violated Mastroianni's constitutional right. The appellants will have an opportunity at trial to produce evidence negating Mastroianni's claims in order to prevent him from recovering. Our task at this stage is to determine whether, in taking the facts in the light most favorable to Mastroianni, the appellants violated a clearly established law in arresting Mastroianni.

prima facie evidence of probable cause to arrest him and did not break the chain of causation with respect to the appellants' liability.

Generally, an intervening act of a prosecutor, judge or grand jury will break the chain of causation with respect to alleged illegal conduct of a police officer. *Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir.1989). In *Barts,* the court held that:

> The intervening acts of the prosecutor, grand jury, judge and jury—assuming that these court officials acted without malice that caused them to abuse their powers—each break the chain of causation *unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen.*

*Barts,* 865 F.2d at 1195 (emphasis added). According to the reasoning in *Barts,* a grand jury indictment does not always break the chain of causation with respect to alleged illegal acts taking place prior to securing the indictment. Therefore, if the grand jury was misdirected, then the grand jury indictment cannot break the chain of causation relating back to the initial conspiracy and fabrication of evidence against Mastroianni. *Barts,* 865 F.2d at 1195. We believe that chain of causation was not broken with respect to the appellants' alleged acts of conspiring to violate Mastroianni's rights.

In this case, Mastroianni has presented sufficient evidence to raise a genuine issue of material fact regarding appellants' alleged misconduct in misdirecting the grand jury. For example, it appears that Deering and Yeomans misrepresented information to the grand jury involving whether Polumbo agreed to accept drugs from Kirkland, Mastroianni's confidential informant. During Yeomans's testimony elicited from Deering, the following exchange occurred:

Q: All right. Based on your investigation, was it determined at anytime that Mr. Kirkland had an agreement to deliver that marijuana to Mr. Polumbo's house?

A: No, sir.

16

The record, on the other hand, reveals that an interview summary contained in Yeomans's personal files included the following statement:

> At approximately 1:25 on Wednesday, May 29, 1991, ASAC W.J. Yeomans and Special Agent G.C. Harrell of the Georgia Bureau of Investigations interviewed Mr. Leo Charles Polumbo. Mr. Polumbo stated on March 5 or 6, 1991, at approximately 11 a.m. Preston Kirkland came to his residence and asked Mr. Polumbo if he could get rid of some weed (meaning marijuana) for him. Mr. Polumbo stated he did not have any money, and Kirkland stated he would front the marijuana for him. Mr. Polumbo stated okay and Mr. Kirkland told Mr. Polumbo he would bring approximately two ounces of marijuana at approximately 1:30 to 2 p.m. on the same evening, this being either March 5 or March 6, 1991.

Additionally, during Yeomans's testimony he testified that Kirkland stated that he received orders from Mastroianni to plant drugs in Polumbo's residence. Kirkland submitted an affidavit, however, refuting Yeomans's testimony regarding that statement. Our review of the record leads us to conclude that the grand jury indictment did not break the causal chain with respect to appellants' alleged conspiracy to arrest Mastroianni for his refusal to testify against Sheriff Smith. *Barts,* 865 F.2d at 1195; *see Kelly v. Curtis,* 21 F.3d 1544, 1557 (11th Cir.1994); *Hand v. Gary,* 838 F.2d 1420, 1426-28 (5th Cir.1988) (finding that any misdirection of the magistrate or grand jury perpetuates the taint of the original official behavior).

We also believe that clearly established law dictates that an arrest pursuant to a grand jury indictment may violate the Fourth Amendment if the grand jury was misled or experienced undue pressure. *Barts,* 865 F.2d at 1195. We believe it is clear from both Supreme Court precedent and this circuit's case law that an arrest pursuant to an arrest warrant or search warrant may offend the Constitution under certain circumstances.[9] *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89

---

[9]Although the district court relied on *Hand v. Gary,* 838 F.2d 1420 (5th Cir.1988) for the proposition that any misdirection of a magistrate or a grand jury perpetuates the taint of the original impermissible conduct, we cannot rely on case law from another circuit to determine whether the law was clearly established in this circuit. This circuit decided *Barts* prior to the

17

L.Ed.2d 271 (1986). In Malley, the Supreme Court held that police officers may be held liable for damages resulting from an arrest or search under the authority of a warrant when no reasonable officer could have believed that the affidavits established probable cause, and that the judge's issuance of the warrant does not break the chain of causation. *Malley,* 475 U.S. at 344 n. 7, 106 S.Ct. 1092. Similarly, this circuit has held that the intervening act of a grand jury indictment breaks the chain of causation "unless the plaintiff can show that these intervening acts were the result of deception or undue pressure." *Barts,* 865 F.2d at 1195 (Edmondson, J.); *compare Franks v. Delaware,* 438 U.S. 154, 156, 165-71, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (finding that the constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant). Therefore, we believe that the district court properly found that the chain of causation was not broken and that the appellants were not entitled to qualified immunity because genuine issues of material fact exist regarding the appellants' alleged agreement to violate Mastroianni's constitutional rights through fabricating evidence and misleading the grand jury.[10]

_____

conduct giving rise to this litigation and established the same proposition that the Fifth Circuit established in *Hand. Barts v. Joyner,* 865 F.2d 1187 (11th Cir.1989). Therefore, it was clearly established in the Eleventh Circuit at the time of the appellants' alleged conduct that officials who engage in impermissible conduct prior to securing a grand jury indictment cannot rely on the grand jury indictment to break the chain of causation with respect to their original misconduct. As matter of policy, it makes little sense to allow police officers or prosecutors to engage in fraudulent and deceitful conspiracies in order to secure a grand jury indictment and then use the indictment to shield them from any possible causes of action for their tainted behavior.

[10]In reaching this conclusion, we note the ostensible anomaly of providing absolute immunity for initiating the prosecution, presenting evidence, and testifying before a grand jury, while denying any immunity for the alleged fabrication of evidence prior to the judicial phase of the criminal process. The "function test" surrounding absolute immunity compels this result, however. *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209 (1993). We must be careful not "to conflate the question of whether a Section 1983 plaintiff has stated a cause of action with the question whether the defendant is entitled to absolute immunity for his

18

C. Conspiracy

Appellants claim that Mastroianni failed to establish a conspiracy among them to violate his right. They claim that the evidence revealed a good-faith effort on their part to carry out their official duties. First, we must determine whether it was clearly established in the Eleventh Circuit that conspiracy to violate someone's constitutional right is actionable. We find that at the time of the alleged activity against Mastroianni it was clearly established in the Eleventh Circuit that conspiring to violate the constitutional rights of another is actionable under section 1983. *Dennis,* 449 U.S. at 29, 101 S.Ct. 183; *Strength,* 854 F.2d at 425. In *Strength,* an investigator from the Office of the Attorney General for the State of Alabama received a tip from W.L. Hubert that Hubert's former business partner, William Strength, was engaged in fraudulent activity relating to use of corporate checks. After receiving information from Hubert, Carroll began an investigation and after completing his investigation presented a report to the district attorney asking for an indictment. Carroll was the sole witness before the grand jury that eventually returned a multiple-count forgery indictment against William Strength and his wife. Following the indictment, a district attorney replacing the initial district attorney moved to dismiss the indictment. In a sworn affidavit explaining her reasons for dismissing the indictment against Strength, the district attorney stated:

> When I reviewed ATI's business record ... I was "floored." After reviewing these records it was apparent that the endorsements were not criminally made. To the extent that the records were produced, they completely exonerated the Strengths. None of the records produced indicated any criminal activity, but completely accounted for the money to which

---

actions." *Buckley,* 509 U.S. 259, 113 S.Ct. at 2612 n. 5. The misdirection of the grand jury removes the protection that any pre-grand jury misconduct would have enjoyed after an indictment was issued absent any misdirection of the grand jury.

they related. I felt at the time and still feel that our office had been used and that we had been duped into indicting the Strengths.

*Strength,* 854 F.2d at 423. In finding that the Strengths could state a claim for conspiracy to violate their constitutional rights, this circuit recognized that persons have a right to be free from capricious prosecution, i.e., those prosecutions procured through false and misleading information that would cause a prosecutor to believe probable cause existed. *Strength,* 854 F.2d at 425. Therefore, we conclude that it was clearly established in the Eleventh Circuit that a conspiracy to violate the constitutional rights of another such as using false and misleading information to cause a malicious prosecution is actionable under section 1983. *Strength v. Hubert,* 854 F.2d 421 (11th Cir.l988).

In order for a section 1983 conspiracy claim to survive a summary judgment motion, the plaintiff must show specific facts indicating the existence or execution of the alleged conspiracy. *Granville v. Hunt,* 411 F.2d 9, 11 (5th Cir.1969).[11] The record reveals that sufficient evidence exists to conclude that, in viewing the facts in the light most favorable to Mastroianni, appellants reached an understanding to violate Mastroianni's constitutional rights. *See Bailey v. Board of County Comm'rs of Alachua County,* 956 F.2d 1112, 1122 (11th Cir.1992). Mastroianni alleged that during initial meetings with Jackson and Yeomans they made it clear that he had to cooperate in helping them prosecute his superior, Sheriff Smith, or face prosecution himself. The record reveals discrepancies between the contents of the GBI investigative file on Mastroianni and Yeomans's testimony before the grand jury. Moreover, the record reveals that Yeomans received legal advice from Deering and that all appellants communicated regarding this case. Bowers admitted to

---

[11]The Eleventh Circuit adopts as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

personally supervising the case and spending approximately two hours per week on the case during its duration. Deering advised Jackson and Yeomans during the investigation. We believe that these facts, taken in the light most favorable to Mastroianni, raise a genuine issue of material fact regarding his conspiracy claim. The district court properly denied appellants' motion for summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of summary judgment in this case.

AFFIRMED.