HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
Although I agree that Defendants Raker and Ballantine are entitled to qualified immunity and that the district court properly granted Defendants judgment on Alex Le-Fever’s family-integrity claims, my reasoning differs from the majority’s and therefore I write separately to address these claims. Further, I do not agree that Ferguson is entitled to qualified immunity from Virginia LeFever’s Brady claim based on Ferguson’s past perjury, and respectfully dissent from that portion of the majority’s opinion.
I. Virginia LeFever
LeFever claims the prosecution failed to disclose favorable evidence in violation of her right to due process, and that Ferguson, Dr. Raker, and Ballantine are liable for money damages for their roles in that violation. In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that “the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Id. at 87, 83 S.Ct. 1194. “Favorable” evidence, the Court later explained, includes both exculpatory and impeachment evidence. United States v. Bagley, 473 U.S. 667, 676-77, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Further, favorable evidence is “material” for Brady purposes “when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.” Cone v. Bell, 556 U.S. 449, 470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). “In other words, favorable evidence is subject to constitutionally mandated disclosure when it ‘could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.’ ” Id. (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).
Disclosure to the defense is ultimately “the responsibility of the prosecutor,” Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), who must “learn of any favorable evidence known to *449 the others acting on the government’s behalf in the case.” Kyles, 514 U.S. at 437, 115 S.Ct. 1555, Thus, the government’s disclosure obligation “encompasses evidence ‘known only to police investigators and not to the prosecutor.’” Strickler v. Greene, 527 U.S. 263, 280-81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting id. at 438, 115 S.Ct. 1555). As a result, investigators have an “analogous or derivative obligation” of disclosure to the prosecutor. Moldowan v. City of Warren, 578 F.3d 351, 381 (6th Cir.2009); see also Carrillo v. County of Los Angeles, 798 F.3d 1210, 1222 & n. 14 (9th Cir.2015) (citing cases). However, it is the prosecutor who must “gauge the likely net effect of all [undisclosed] evidence and make disclosure when the point of ‘reasonable probability’ is reached.” Kyles, 514 U.S. at 419, 115 S.Ct. 1555. When the prosecution fails to disclose material evidence, Brady holds that the defendant’s right to due process has been violated, and the defendant is entitled to a new trial.
If the conviction is vacated, the criminal defendant may bring a § 1983 action for money damages. Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Poventud v. City of New York, 750 F.3d 121, 132-36 (2d Cir.2014) (en banc). Both police officers and forensic investigators may be liable for withholding material evidence from prosecutors, causing the prosecution to violate the criminal defendant’s Brady rights. Moldowan, 578 F.3d at 376-389 (police officers); id. at 396-97 (forensic investigators). However, because investigators lack legal training to evaluate materiality, we have required more than just nondisclosure before holding investigators personally liable for causing a Brady violation. First, police are liable if the exculpatory or impeachment value of the evidence is “apparent,” meaning police “know or should know [the evidence] ‘might be expected to play a significant role in the suspect’s defense.’ ” Moldowan, 578 F.3d at 388 (quoting California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). But see Owens v. Balt. City State’s Atty.’s Office, 767 F.3d 379, 396 & n. 6 (4th Cir.2014) (noting that some circuits require bad faith). Second, forensic investigators are liable for “deliberately withholding” favorable evidence. Moldowan, 578 F.3d at 397.
Police officers and forensic investigators are entitled to qualified immunity from money damages if their constitutional duties were not “clearly established” at the time of a Brady violation. Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). Our court has held that both police officers and forensic investigators have had a clearly established duty to disclose favorable evidence since at least 1990. Moldowan, 578 F.3d at 381-82, 396-97. But see Drumgold v. Callahan, 707 F.3d 28, 43 (1st Cir.2013) (suggesting police officers’ duty was not clearly established until 1995). Here, Le-Fever’s trial took place in 1990, and our cases dictate that her right to disclosure of favorable evidence by the defendants— subject to the relevant standards — was clearly established. Thus, the main question before us is whether LeFever has made out a Brady violation for which each of the three defendants can be held hable.
A. Ferguson
To determine whether Ferguson is entitled to qualified immunity from money damages, I would first evaluate whether LeFever has made out a Brady violation, and then consider whether Ferguson can be held liable for that violation.
1. Undisclosed evidence
First, LeFever asserts that Ferguson failed to disclose his history of misrepre *450 senting his credentials under oath. Past perjury is, of course, relevant to a witness’s credibility. And, as a panel of- this court concluded in Westerfield v. United States, 483 Fed.Appx. 950 (6th Cir.2012), past perjury by a government witness is considered impeachment evidence for Brady purposes, subject to disclosure. Other courts have reached this same conclusion, e.g., Simmons v. Beard, 590 F.3d 223, 236 (3d Cir.2009); United States v. Cuffie, 80 F.3d 514, 517-18 (D.C.Cir.1996), even when the undisclosed past-perjury evidence ultimately is not material to the outcome of the trial, e.g., United States v. Avellino, 136 F.3d 249, 258-59 (2d Cir.1998). Here, Ferguson’s past perjury calls into question his credibility as a witness, regardless whether he graduated before LeFever’s trial, or had the requisite credentials to serve as a forensic examiner throughout the investigation.
The majority suggests that in pursuing a Brady claim for failure to disclose a history of perjury, LeFever seeks to circumvent testimonial immunity, but cites no case holding that testimonial immunity extends to a Brady claim based on withholding of impeachment evidence consisting of past perjury. Cf. Rehberg v. Paulk, — U.S. —, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012); Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As we explained in Gregory v. City of Louisville, 444 F.3d 725 (6th Cir.2006), “absolute testimonial immunity does not ‘relate backwards’ to ‘protect a defendant for any activities he allegedly engaged in prior to taking the witness stand for his testimony.’” Id. at 738 (quoting Mastroianni v. Bowers, 160 F.3d 671, 677 (11th Cir.1998)) (alterations omitted). “Merely because a state actor compounds a constitutional wrong with another wrong which benefits from immunity is no reason to insulate the first constitutional wrong from actions for redress.” Id. at 739. Ferguson continued to misrepresent his credentials at LeFever’s trial, but his past perjury would be impeachment evidence regardless, and his withholding of that evidence is distinct from his testimony at her trial.
Next, LeFever argues that Ferguson should have disclosed the manuscript — titled “Angel of Mercy or Angel of Death?” — that he wrote about William Le-Fever’s death. R. 92-16, PID 2147-72. Ferguson, in the role of protagonist, describes his investigation into William Le-Fever’s death, and explains how he solved the murder through forensic analysis. Id. at PID 2158-68. LeFever, in the title role, is portrayed as her husband’s murderer, and Ferguson imagines, in lurid detail, her actions on the night her husband was poisoned. Id. at PID 2169-72. Further, Ferguson implies that LeFever may have been responsible for the deaths of other family members — two of her children, her father-in-law, and her sister-in-law, all of whom allegedly died under her care — and accuses LeFever of “takfing] a particular pleasure” when patients would die at the hospital where she worked as a nurse. Id. at PID 2148-49.
In LeFever’s criminal trial, the manuscript could have been used as evidence of bias or an interest in her conviction. Courts have long held that a financial interest in the outcome of a trial is impeachment evidence, and the authorship of a marketable manuscript is no different. See, e.g., United States v. Reed, 437 F.2d 57, 58-59 (2d Cir.1971) (per curiam). The Fifth Circuit recognized as much in a Brady case, United States v. Edwards, 442 F.3d 258, 267-68 (5th Cir.2006), although ultimately concluding that the witness’s book was not material. Ferguson stated in his 2012 deposition that he had no intent to sell the manuscript and subsequently made no attempt to market it, R. 92, PID 1967, but this post hoc explanation does *451 not affect the manuscript’s impeachment value in 1990. Thus, the manuscript is properly considered impeachment evidence subject to disclosure under Brady.'
Lastly, I agree LeFever’s claim that Ferguson should have disclosed his “true conclusions” is barred under the reasoning of our previous judgment in this case. LeFever v. Ferguson, 567 Fed.Appx. 426, 431 (6th Cir.2014).
2. Materiality
Even if the past perjury and manuscript are impeachment evidence subject to disclosure, LeFever cannot establish a Brady violation unless the undisclosed evidence was material. Strickler, 527 U.S. at 281-82, 119 S.Ct. 1936. The Supreme Court has explained that the materiality of undisclosed evidence must be “considered collectively, not item by item,” Kyles, 514 U.S. at 436, 115 S.Ct. 1555, so the effect of Ferguson’s past perjury and his manuscript must be considered together. To determine whether there was a reasonable probability of a different outcome, I would look no further than the trial court’s decision to vacate LeFever’s conviction.
LeFever was convicted in a bench trial, and the same trial judge presided over her post-conviction proceedings. The trial judge granted LeFever a new trial after Ferguson’s history of perjury came to light, explaining:
This judge was convinced of the defendant’s guilt on February 22, 1990. I don’t know if I feel any different today. This is about fairness. Is it fair to let a verdict stand, when it is based in large part on the testimony of a proven liar? And the proven liar was the key witness in the case!
R. 114-4, PID 4027. The trial judge further noted that Ferguson was the “key witness to the State’s case,” and that the other forensic examiners “relied heavily on testing done by Ferguson in making their findings.” Id. at PID 4026. “Ferguson was the linchpin holding the State’s case together. Without his testimony, the State’s case would have fallen apart.” Id. Thus, the trial judge believed there could be no confidence in his own verdict, given the importance of Ferguson’s testimony to his decision and the credibility issues raised by Ferguson’s history of perjury. Because the trier of fact lost confidence in his own verdict, so must we. Thus, in my view, LeFever has made out a Brady violation.
3. Liability
A forensic examiner can be held liable for “deliberately -withholding” favorable evidence. Moldowan, 578 F.3d at 397. Here, Ferguson purposefully misrepresented his credentials for years, and continued to lie about his graduation date even after he graduated. Thus, I conclude that Ferguson deliberately withheld his past perjury. However, nothing in the record suggests that Ferguson deliberately concealed the manuscript, which he shared with colleagues, although not the prosecution. Nor would the relevance of the transcript for impeachment be apparent to him. In sum, Ferguson can be held liable for depriving LeFever of her clearly established rights with respect to the past perjury but not the manuscript. I would reverse the district court’s grant of summary judgment to Ferguson on the Brady /past perjury claim.
B. Dr.' Raker and Ballantine
I agree with the majority that Dr. Raker, a coroner, and Ballantine, a detective, are entitled to qualified immunity, even though Ferguson’s manuscript was impeachment evidence that should have been disclosed. LeFever has not alleged or established that Dr. Raker “deliberately *452 with[e]ld” the manuscript from the prosecution. Moldowan, 578 F.3d at 396-97. Ballantine apparently did not even know about the manuscript — in depositions, both Ferguson and Ballantine testified that Ferguson never showed the manuscript to Ballantine, and LeFever offers only con-clusory allegations that Ballantine must have known. Further, the impeachment value of the manuscript would not have been “apparent” to Dr. Raker or Ballan-tine such that they would have known that it “might be expected to play a significant role” in LeFever’s defense, or that they were required to inform the prosecutor. Id. at 382.
II. Alex LeFever
As I read the complaint, Alex LeFever (“Alex”) does not seek relief for the violation of his mother’s constitutional rights. Rather, he claims that his mother’s wrongful conviction violated his own due-process right to family integrity. In Jaco v. Bloechle, 739 F.2d 239 (6th Cir.1984), the court held that a mother could not bring a § 1983 action for a violation of her son’s rights, but the plaintiff did not argue that her son’s death violated her own constitutional rights. And in Purnell v. City of Akron, 925 F.2d 941 (6th Cir.1991), the court considered a § 1983 claim “for deprivation of the parent-child relationship in the wrongful death context,” but expressly declined to “address the merits of [this] difficult question.” Id. at 948 n. 6. The court noted other circuits had held that “a decedent’s immediate family may bring a section 1983 claim for deprivation of the parent-child relationship in the wrongful death context,” and that there was legislative history supportive of those cases. Id. The court then compared these authorities with Jaco’s holding that a § 1983 action must be “personal to the injured party,” but the court did not purport to decide whether Jaco foreclosed a § 1983 family-integrity claim m our circuit. Id. Thus, I am not convinced that Alex failed to raise a cognizable § 1983 claim.
In any event, I would find that the individual defendants are entitled to qualified immunity because the right to family integrity in this context was not clearly established in 1990. Cf. al-Kidd, 131 S.Ct. at 2084 (instructing courts “not to define clearly established law at a high level of generality”). To demonstrate a clearly established right, Alex mainly relies on cases addressing state regulation of families. E.g., Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); Santoshy v. Kramer, 456 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Lassiter v. Dep’t of Soc. Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In these cases, the state purposefully separated a child from a parent by interfering with a custodial relationship. Here, in contrast, Alex’s separation from his mother was incidental to her incarceration, and the cases did not clearly establish that wrongful incarceration was an unconstitutional interference with a parent-child relationship at the time of LeFever’s conviction.
III. Conclusion
For these reasons, I join the affirmance, except with respect to the district court’s grant of summary judgment to Ferguson in LeFever’s case.